# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY NOEL JOHNSON,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No.   325456
Wayne Circuit Court
LC No.   14-007003-FC

Before:  METER, P.J., and SHAPIRO and O'BRIEN, JJ.

PER CURIAM.

Defendant, Timothy Noel Johnson, was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b, and felon in possession of a firearm, MCL 750.224f, and sentenced as a second-offense habitual offender, MCL 769.10, to concurrent prison terms of life without parole for the murder conviction and 32 months to five years for the felon in possession conviction and a consecutive two-year prison term for the felony firearm conviction.  He appeals as of right his December 12, 2014 judgment of sentence.  We affirm.

Defendant's convictions arise out of the shooting death of Dakarie Mickinnie.  Late in the evening on June 20, 2014, Kalyn Ware was stopped at a stoplight when she heard approximately five gun shots.  After hearing the shots, she observed a man run by her vehicle and fall.  A second man chased the man who fell and shot him approximately six more times.  Ware described the shooter as being "[v]ery" close and said that "the whole time [she] was looking him in his face."  Ware identified defendant as the shooter.  Defendant denied having ever "met" the victim, but he did admit being "mad as hell" after "going down through [the victim's] Twitter account" and "seeing videos" "of [defendant's] son."  Defendant additionally admitted that he threatened the victim, saying that the two spoke "[a]bout fighting each other, and met up with each other.  Gun violence."  Nevertheless, he denied having killed Mickinnie.  After being arrested and charged, he was eventually convicted and sentenced as described above.  This appeal followed.

-1-

## I. ISSUES RAISED IN DEFENDANT'S BRIEF ON APPEAL

### A. GREAT WEIGHT OF THE EVIDENCE

First, defendant contends that he is entitled to a new trial because the great weight of the evidence does not support his conviction of first-degree premeditated murder. We disagree.

"An appellate court will review a properly preserved great-weight issue by deciding whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011).

> It is well recognized that the threshold necessary for a judge to overrule a jury and grant a new trial is unquestionably among the highest in our law. When analyzing a great-weight challenge, no court may sit as the 13th juror and reassess the evidence. [I]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial . . . . [A]bsent exceptional circumstances, issues of witness credibility are within the exclusive province of the trier of fact. To support a new trial, the witness testimony must contradict[ ] indisputable physical facts or laws, be patently incredible or def[y] physical realities, be so inherently implausible that it could not be believed by a reasonable juror, or have been seriously impeached in a case that was marked by uncertainties and discrepancies. [*People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015), lv abeyed ___ Mich ____; 872 NW2d 492 (2015) (citations and internal quotation marks omitted; alterations by the *Bosca* Court).]

Contrary to defendant's assertions on appeal, the testimony of Kalyn Ware, an eyewitness to the murder, was not so patently incredible or inherently implausible that a new trial is warranted. Defendant points to the fact that Ware only observed the shooter for a few seconds, the fact that Ware did not identify defendant as the shooter until 17 days after the shooting, and the fact that other witnesses described the shooter differently as reasons to disbelieve Ware's testimony, but, at best, those facts merely present credibility questions, which are better suited for the jury. *Bosca*, 310 Mich App at 13. Defendant also points to the testimony of a second witness, Ashley Gunn, who testified that the shooter was 5'9" and 200 pounds. Because he was 5'11" and 150 pounds, defendant claims, he could not have been the shooter. But, the jury could have concluded that there was more than one individual involved, which is consistent with the testimony that there were two sets of shell casings at the scene, or that Ware's testimony was more credible than Gunn's. Perhaps the most significant disparity between witnesses' testimony is whether the shooter had facial hair—Ware testified that the shooter, i.e., defendant, had facial hair, but, according to defendant, he did not—but that relatively minor disparity was properly put before the jury and does not require reversal in and of itself. In essence, defendant is merely asking this Court to sit as the 13th juror and reassess the evidence, which it is not permitted to do. *Id*. It is also important to keep in mind that, in addition to Ware's testimony, a .40 caliber magazine and .40 caliber rounds were found in a home that was attributed to defendant, a black and red fisherman's hat (similar to the hat that Ware testified the shooter was wearing) was found in that same home, the cell phone tower records placed defendant's cell phone in the sector that included the area of the crime near the time of the shooting, there was evidence that

defendant made threats against the victim, and there were photographs of defendant with handguns and ammunition. Accordingly, we conclude the evidence did not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. *Cameron*, 291 Mich App at 617.

## B. ADMISSION OF FACEBOOK EVIDENCE

Next, defendant argues that the trial court erred by admitting Facebook photographs because the prosecution did not lay sufficient foundation for the evidence's admission and because its probative value was substantially outweighed by the danger of unfair prejudice. We disagree.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defendant objected at trial to the admission of the Facebook records on the basis that a statement from the keeper of records was required. Therefore, defendant's claim that the records lacked a proper foundation is preserved. *Id*. Defendant did not argue, however, that the photographs were unfairly prejudicial until after the trial court's final instructions. Further, he did not raise the same argument that he asserts on appeal—that there was no evidence that the guns in the photographs were the same guns used in the shooting. Therefore, defendant's claim that the photographs were unfairly prejudicial is unpreserved. *Id*.

This Court reviews for an abuse of discretion a trial court's decision to admit evidence. *People v Duenaz*, 306 Mich App 85, 98; 854 NW2d 531 (2014). "The trial court's decision is an abuse of discretion when the result is outside the range of principled outcomes." *Id*. This Court reviews "de novo preliminary questions of law regarding whether a statute or evidentiary rule applies." *Id*. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

## 1. FOUNDATION

At issue here is the trial court's admission of Facebook photographs of defendant with guns and ammunition.[1] MRE 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to

---

[1] Defendant also refers to "threatening remarks aimed at the decedent," but the Facebook comment that was admitted was directed toward Gunn, not the decedent. To the extent defendant claims there was no foundation for the admission of the Facebook comment, the prosecution presented testimony that defendant's Facebook username was "Cashout Team Tim B-SHXT'N," that the comment came from defendant's username, and that the comment was obtained pursuant to the search warrant for defendant's Facebook account. In any event, even assuming this comment was improperly admitted, its admission was harmless for similar reasons as those articulated with respect to the photographs.

support a finding that the matter in question is what its proponent claims." MRE 901(b)(1) provides that the testimony of a witness with knowledge "that a matter is what it is claimed to be" is an example of proper authentication or identification. "A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person." *In re Robinson*, 180 Mich App 454, 460; 447 NW2d 765 (1989); see also MRE 901. In this case, Detroit Police Officer Jamaire McEntire, who had interviewed defendant and was thus familiar with his appearance, testified that the Facebook photographs were of defendant. Although Officer McEntire did not expressly state that the photographs were an "accurate representation" of defendant, his testimony that they were of defendant was sufficient to establish a proper foundation for the admission of the photographs.

Defendant cites MRE 803(6), the business record exception to the hearsay rule, which requires "the testimony of the custodian or other qualified witness." However, whether the evidence satisfies an exception to the rule prohibiting hearsay is a separate inquiry from whether there was a proper foundation for the admission of the evidence. Although the prosecutor did refer to the Facebook evidence as "business record[s]," there is no indication that the evidence was admitted under MRE 803(6). In fact, defense counsel stated below that if the documents were otherwise properly admitted, he had no objection based on hearsay. Defendant similarly cites MRE 902(11), which requires "a written declaration under oath by its custodian or other qualified person" for the admission of a record of regularly conducted business activity that would be admissible under MRE 803(6). Again, however, there is no indication that the Facebook photographs were admitted as business records under MRE 803(b). Therefore, this certification was not required.

Defendant also argues that the Facebook photographs were inadmissible hearsay because there was nothing to establish that the Facebook page or postings actually belonged to defendant. Defendant again conflates hearsay and foundation. Defendant's statement of the question presented on appeal does not mention hearsay, nor was a hearsay argument advanced below. As discussed above, there was a proper foundation for the admission of the Facebook evidence, which was obtained pursuant to a search warrant for defendant's Facebook account, and defendant's claim that there was no evidence that it was actually his page and postings went to the weight, not the admissibility, of the evidence.

Furthermore, even if the Facebook photographs were improperly admitted, any error was harmless in light of Ware's identification of defendant as the shooter, the .40 caliber magazine and .40 caliber rounds found at defendant's homes, the black and red fisherman's hat found at defendant's home, the cell phone tower records placing defendant's cell phone in the area of the crime near the time of shooting, and defendant's threats against the victim. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Roscoe*, 303 Mich App 633, 639; 846 NW2d 402 (2014) (citation and internal quotation marks omitted).

## 2. UNFAIR PREJUDICE

Defendant argues that the Facebook photographs were unfairly prejudicial because there was no evidence proving that the guns in the photographs were the guns used in this case or when the photographs were taken. MRE 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

> Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) (citations omitted).]

"Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989) (opinion by BOYLE, J.). Here, the photographs established defendant's possession of a handgun similar to one used in the crime, and made it more probable that he was the shooter.[2] This is especially true considering the fact that defendant's identity as the shooter was at issue in this case. Thus, the photographs had the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. Additionally, the testimony presented clearly reflected that the guns in the photographs were not necessarily those found at the scene, and that is precisely what defense counsel argued to the jury.

Furthermore, even if we assume that the admission of the photographs was unfairly prejudicial, defendant fails to establish that their admission affected his substantial rights. As discussed above, given Ware's identification, the .40 caliber magazine and .40 caliber rounds found at defendant's home, the black and red fisherman's hat found at defendant's home, the cell phone tower records placing defendant's cell phone in the area of the crime near the time of shooting, and defendant's threats against the victim, we cannot conclude that the admission of these photographs affected the outcome of the trial.

---

[2] Although neither Gunn nor Ware described the gun used in the shooting as a handgun, in discussing the .40 caliber Smith & Wesson casings, Detective Sergeant Molnar agreed that .40 caliber handguns were at issue.

## II. ISSUES RAISED IN DEFENDANT'S STANDARD 4 BRIEF

Defendant raises several additional issues in a pro se brief filed pursuant to Supreme Court Administrative Order 2004-6, Standard 4.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective in the following ways: (1) failing to investigate, research, and present a substantial defense based on the witnesses' inconsistent testimony regarding the timing of the incident, (2) failing to investigate and challenge the chain of custody of the shell casings, (3) failing to challenge Ware's credibility, (4) failing to consult with expert witnesses, including identification experts, ballistics experts, and cell phone or cell phone tower experts, (5) failing to consult with a private investigator to go over the crime scene, (6) failing to object to enlarged photographs of bullets and bullet fragments removed from the victim, extensive medical testimony, and diagrams of the entrance and exit wounds, (7) failing to object to the prosecutor's "questionable" closing argument, and (8) failing to request a jury instruction on an alibi defense. Defendant also argues that the cumulative effect of these failures deprived him of his constitutional rights to effective assistance of counsel and due process. We disagree in each respect.

In order to preserve a claim that counsel was ineffective, a defendant must move the trial court for a new trial or evidentiary hearing. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). Defendant moved for a new trial, but he did not raise the claim of ineffective assistance of counsel in doing so. Therefore, our review of this issue is limited to mistakes apparent from the record. *Id.*

"A criminal defendant has the fundamental right to effective assistance of counsel." *Lane*, 308 Mich App at 67.

> To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. We must presume that counsel provided effective assistance. A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* at 68 (citations omitted).]

"A defendant raising a claim of ineffective assistance of counsel bears the burden of proving the factual predicate of his or her claim." *People v Stokes*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 14.

## 1. FAILURE TO INVESTIGATE AND PRESENT A SUBSTANTIAL DEFENSE

> Defense counsel's failure to present certain evidence will only constitute ineffective assistance of counsel if it deprived defendant of a substantial defense. Moreover, decisions regarding what evidence to present and which witnesses to call are presumed to be matters of trial strategy, and we will not second-guess

strategic decisions with the benefit of hindsight. [*People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013) (citations omitted).]

"A substantial defense is one that could have affected the outcome of the trial." *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

Defendant argues that defense counsel was ineffective by failing to investigate and present a defense relating to the timing of the shooting. According to defendant, defense counsel should have presented a defense of a "tactical frame up" based on the inconsistent witness testimony regarding the time of the murder. He argues that, based on the cell phone evidence, he would have been on his phone at the time of the shooting, which no one testified was the case. It is not apparent from the record, however, that defense counsel failed to investigate the time of the shooting. Therefore, defendant fails to establish the factual predicate for this claim. *Stokes*, ___ Mich App at ___; slip op at 14. Additionally, defense counsel's decision not to present a detailed challenge regarding the time of the shooting is presumed to be trial strategy. *Dunigan*, 299 Mich App at 589-590. Further, defendant fails to establish that he was deprived of a defense that would have affected the outcome of the trial. With the exception of the victim's mother, who referred to times of either 11:00 p.m. or 11:03 p.m., the witnesses testified regarding events occurring at *approximately* 11:00 p.m. Therefore, their testimony was not inconsistent. Moreover, defendant's claim that he would have been on his phone at the time of the shooting lacks merit because the outgoing call from his cell phone was placed at 10:54 p.m., but there was no evidence regarding when the call ended or exactly when the shots were fired, and the first 911 call was placed at 11:07 p.m.

## 2. FAILURE TO INVESTIGATE AND CHALLENGE CHAIN OF CUSTODY

"[B]reaks in the chain of custody go to the weight of the evidence, not to its admissibility." *People v Mitchell*, 493 Mich 883, 884; 822 NW2d 224 (2012). "[C]ounsel is not ineffective for failing to raise a meritless or futile objection." *Putman*, 309 Mich App at 245.

Defendant next contends that defense counsel's failure to investigate and challenge the chain of custody of the shell casings, and failure to conduct voir dire regarding who secured the scene, marked the evidence, and turned the evidence over to the detectives was unreasonable and prejudiced him in light of the fact that no more than 12 shots were fired, yet 19 shell casings were recovered and none of the bullets or bullet fragments were identified as a .40 caliber bullet. Again, it is not apparent from the record that defense counsel failed to investigate this issue. Moreover, any challenge to the chain of custody would not have affected the admissibility of the shell casings and, thus, would have been futile. Further, Detroit Police Officer Christine Lewis testified that she roped off the scene, and Detroit Police Officer Deborah Stinson testified that she marked the evidence and placed the items she collected into evidence.

To the extent defendant suggests that defense counsel should have challenged the inconsistency between the number of gunshots heard and the number of shell casings found, his decision is presumed to be trial strategy, *Dunigan*, 299 Mich App at 589-590, and it is not probable that this defense would have affected the outcome of the trial. Although a third witness, Robert Bradley, testified that he heard exactly 12 shots, Gunn and Ware only estimated the number of shots they heard. Moreover, given that the victim had 12 gunshot wounds, and

there were also bullet impacts on the garage, it is certainly plausible that there were more than 12 shots fired. Similarly, the fact that Michigan State Police Detective Sergeant Dean Molnar could not determine whether the bullets were fired from the same firearm went to the weight of the evidence, and defense counsel did argue in closing that there was no evidence regarding the type of gun from which the bullets came.

### 3. FAILURE TO CHALLENGE WARE'S CREDIBILITY

"Counsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *Lane*, 308 Mich App at 68. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

Defendant contends that defense counsel should have moved for an adjournment or continuance to determine what Ware learned about the shooting on the Internet. On cross-examination, Ware testified that she knew the victim's name and used it during her testimony because it "was all over the internet." Although defense counsel did not move for an adjournment or continuance in order to determine what Ware learned on the Internet, this decision is presumed to be trial strategy. *Davis*, 250 Mich App at 368. Ware merely said that the victim's name was all over the Internet; she did not, however, mention seeing anything about defendant that would suggest that her identification was tainted, and the victim's name was not in dispute. Thus, defendant also fails to establish that the trial court would have granted an adjournment or continuance had one been requested. Moreover, there is nothing in the record to suggest that defense counsel did not investigate this issue. Defendant merely speculates that a continuance to allow for further investigation would have led to the discovery of evidence that could have affected the outcome of the trial, and this mere speculation is insufficient to warrant reversal.

Defendant also argues that defense counsel should have questioned Ware further regarding the direction of the streets near the location of the murder. Defense counsel, however, did ask Ware what street she was on, and she testified that she was on Wyoming headed toward Eight Mile, which was consistent with her preliminary examination testimony. Defendant is correct that Ware's testimony that she was on Wyoming headed north toward Eight Mile is inconsistent with her testimony that the shooter entered a vehicle that headed up Pembroke toward Eight Mile, but, when Ware was asked what direction the vehicle that the shooter got into went, it was the trial court that interjected and asked, "Eight Mile?" Ware said, "Eight Mile," and the trial court said, "That's north." Defense counsel's decision not to ask additional questions is presumed to be trial strategy, and, nonetheless, emphasizing Ware's apparent confusion of the streets and directions would not have affected the outcome of the trial.

### 4. FAILURE TO CONSULT EXPERTS

An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In

general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. [*People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citations and internal quotation marks omitted).]

Defendant contends that defense counsel was ineffective by failing to consult with experts in identification, ballistics, and cell phones or cell phone towers. Defendant, however, merely speculates that the experts would have provided favorable testimony. He has not indicated what an expert of this nature would have testified to. Therefore, he fails to show that the present would have affected the outcome of the trial. *Payne*, 285 Mich App at 190.

## 5. FAILURE TO CONSULT A PRIVATE INVESTIGATOR

Defendant also contends that defense counsel was ineffective by failing to consult with a private investigator to go over the crime scene and discover other potential evidence. Like defense counsel's decision not to consult experts, his decision not to consult a private investigator is presumed to be sound trial strategy, and defendant merely speculates that a private investigator might have discovered something favorable to the defense. Again, this speculation is insufficient to warrant review. Moreover, there is no evidence in the record that defense counsel did not adequately investigate the case on his own without the assistance of a private investigator.

## 6. FAILURE TO CHALLENGE MEDICAL EVIDENCE

Defendant contends that defense counsel's failure to object to the enlarged photographs of the bullets recovered from the victim's body, extensive medical testimony, and diagrams of the entrance and exit wounds was unreasonable and prejudiced him. He claims that the evidence was "overly prejudicial," but he fails to explain how the evidence was prejudicial. Photographs of bullets and diagrams of the entrance and exit wounds would not arouse "the sympathies of the jury," as defendant suggests, and, contrary to defendant's assertion, the medical examiner's testimony regarding the locations of the wounds, the bullets recovered, and the manner and cause of death was not "extensive." Defendant fails to establish that defense counsel's failure to object was objectively unreasonable or that an objection would have resulted in the exclusion of the evidence. Moreover, defendant fails to establish that the medical evidence affected the outcome of the trial in light of the other evidence presented.

## 7. FAILURE TO OBJECT TO PROSECUTOR'S CLOSING ARGUMENT

"[D]eclining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defendant contends that defense counsel was ineffective by failing to object to the prosecutor's "questionable" closing argument, but he fails to explain how the argument was improper. Defendant refers to Part D of Issue II of his Standard 4 Brief, in which he asserts prosecutorial misconduct. In that section, defendant merely quotes portions of the prosecutor's closing argument and similarly fails to explain how the arguments were improper. Moreover, as discussed further below, the arguments were not improper; therefore, defense counsel was not ineffective by failing to object. Defendant also fails to establish that the arguments affected the

outcome of the trial. The trial court instructed the jury that "[t]he lawyers' statements, arguments, and any commentary, are not evidence," and "the jury is presumed to have followed its instructions." *People v Mahone*, 294 Mich App 208, 218; 816 NW2d 436 (2011).

## 8. FAILURE TO REQUEST ALIBI JURY INSTRUCTION

Defendant also contends that defense counsel was ineffective by failing to request an alibi instruction. Given that defense counsel filed a notice of intent to rely on an alibi defense and presented alibi witnesses, it is unclear why he failed to request such an instruction. Even assuming, however, that the failure to do so was objectively unreasonable,[3] defendant is unable to establish that he was prejudiced by this failure because the trial court properly instructed the jury regarding the prosecution's burden of proof and the elements of the crime.

> The failure to give an alibi instruction is not error requiring reversal where the court properly instructs on the elements of the charged offense and the prosecutor's burden of proof. Consistent with this principle, where, as here, these instructions were given, the absence of an alibi instruction would not have a reasonable probability of affecting the outcome of the trial. Therefore, we conclude defendant was not denied the effective assistance of counsel. [*People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000) (citation omitted).]

## 9. CUMULATIVE EFFECT

Defendant additionally contends that the cumulative effect of defense counsel's errors denied him the effective assistance of counsel and due process. "It is true that [t]he cumulative effect of several minor errors may warrant reversal where the individual errors would not." *Unger*, 278 Mich App at 258 (citation and internal quotation marks omitted; alterations by the *Unger* Court). However, because the only error committed by counsel was his failure to request

---

[3] We would note, however, that it is certainly conceivable that defense counsel may have declined to request an alibi instruction in light of the weaknesses of the alibi witnesses' testimony, i.e., by choosing not to drawn even further attention to the conflicts in their accounts of defendant's claimed alibi. Specifically, defendant and the two alibi witnesses, a friend and his girlfriend, each testified that defendant was home at different times on the night of the shooting, that defendant was doing different things during the shooting and throughout the evening as a whole, and that different people were in the home at the time of the shooting. For example, defendant testified that he "left the mall around 9:40-ish, or 9:30-ish" and returned home "approximately like 15 minutes" later. His friend, on the other hand, denied that defendant "left the house at any time between 8:30 and 10:00." Instead, defendant's friend testified that defendant arrived at "Somewhere around" "6:30, 7:00." Defendant's friend also testified that he and defendant stayed up all night "just watching movies, playing dominoes . . . ." In contrast, defendant's girlfriend testified that defendant slept in bed with her all night and that, as "a very light sleeper," she was certain that "there's no way he could have left."

an alibi instruction, an error we have already concluded does not require reversal, the cumulative effect of that sole error, alone, also does not require reversal. *Id*.

## B. PROSECUTORIAL MISCONDUCT

Next, defendant contends that he was denied the right to a fair trial based on the following failures on behalf of the prosecution: (1) the failure of the prosecution and the police to investigate the entire case, (2) the failure of the prosecution and the police to investigate possible perjury, (3) the prosecution's improper use of "other acts" evidence, (4) the prosecution's "questionable" comments during closing argument, and (5) the cumulative effect of the prosecution's errors. We disagree in each respect.

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object to the prosecution's alleged failure to investigate the case, to Ware's testimony, or to the prosecutor's closing argument. As discussed above, defendant did object to the introduction of the Facebook evidence, but his objection was not on the same ground that he now asserts on appeal. Therefore, each of these claims are unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Brown*, 294 Mich App at 382-383 (citations omitted).

> A prosecutor's role within our judicial system is to seek justice and not merely to convict. Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [*People v Meissner*, 294 Mich App 438, 455-456; 812 NW2d 37 (2011) (citations and internal quotation marks omitted).]

### 1. FAILURE TO INVESTIGATE CASE

Defendant contends that he was denied a fair trial by the prosecution's failure to investigate the police's findings, the interviews, the photo arrays, the witnesses' descriptions, the number of casings, Ware's statements, the ballistics evidence, and the victim's two friends. Defendant cites *People v Jordan*, 23 Mich App 375, 388; 178 NW2d 659 (1970), in which this Court stated that "[t]he fact that the prosecution merely failed to obtain the evidence rather than actively suppressed evidence already in hand is of no consequence here."[4] In this case, however,

---

[4] *Jordan*, a nonbinding opinion, MCR 7.215(C)(1), involved the rape of a nine-year-old. 23 Mich App at 377. The complainant testified that, after the rape, "there was 'snot' running down

there is nothing in the record to suggest that the prosecutor failed to investigate any of the issues identified by defendant.[5]  Moreover, the prosecution does not have a duty to search for evidence to aid the defendant's case; rather, its duty is to share evidence that is discovered.  *People v Burwick*, 450 Mich 281, 289, n 10; 537 NW2d 813 (1995).  And, while the failure to turn over exculpatory evidence would constitute prosecutorial misconduct, *People v Leo*, 188 Mich App 417, 426-427; 470 NW2d 423 (1991), defendant fails to identify any exculpatory evidence that the prosecution failed to turn over.  Accordingly, defendant fails to establish plain error affecting his substantial rights.

## 2.  FAILURE TO INVESTIGATE WARE'S TESTIMONY

Defendant next contends that he was denied a fair trial by the prosecution's failure to investigate Ware's testimony after she testified that she learned information from the Internet.  Defendant argues that a prosecutor may not knowingly present false testimony.  As discussed above, Ware merely stated that the victim's name was all over the Internet.  This statement did not establish that Ware provided false testimony or that the prosecution knew that Ware was providing false testimony, nor did it necessitate further investigation by the prosecution.  Therefore, defendant fails to establish plain error affecting his substantial rights.

## 3.  INTRODUCTION OF "OTHER ACTS" EVIDENCE

Defendant contends that the prosecution improperly used "other acts" evidence to sway the jury.  Defendant refers to the photographs showing him with handguns and ammunition, and he argues that there was no evidence that the guns were not simply BB guns.  Officer McEntire, however, testified that the firearm in one of the photographs was a semi-automatic handgun.  Defendant also testified, with regard to the photographs, that he poses with guns because he likes

her legs.  Defendant allegedly then took out a white handkerchief with blue stripes which he used to wipe the 'snot' off her thighs." *Id*.  When defendant was subsequently arrested, he "had in his possession a white handkerchief with blue stripes which had certain unidentified stains." *Id*. at 378.  At trial, defendant presented a strong alibi defense—he and his wife testified "in substantial detail" that they went Christmas shopping for the entire time period at issue. *Id*.  Additional witnesses corroborated this defense. *Id*. at 379.  Furthermore, evidence presented at trial demonstrated that the complaint had a "vengeful nature . . . and [there was a] major attack on her credibility and morality[.]" *Id*. at 386.  The trial court nevertheless admitted the handkerchief into evidence, but the stains on the handkerchief were not chemically analyzed before trial. *Id*. at 378.  Defendant was convicted. *Id*. at 385.  After the conviction, the handkerchief was chemically analyzed, and "no traces of sperm [were] on the handkerchief." *Id*. at 386-387.  Obviously, the scenario presented in *Jordan* is substantially different from that presented here.  Defendant's unsupported claims on appeal that the prosecution failed to do a variety of things simply do not rise to the level of those asserted in *Jordan*.

[5] Ware's testimony that she saw the victim's name on the Internet is discussed in detail through this opinion.  With regard to the bullets, although there was no testimony that they were .40 caliber, there is no indication that they were not tested.  Rather, Detective Sergeant Molnar testified that he examined them, but he was unable to say whether they came from the same firearm.

guns, and, until now, he never gave any indication that the guns in the photographs were not BB guns.[6] Defendant fails to establish that the photographs constituted "other acts" evidence under MRE 404(b), and, as discussed above, the admission of these photographs did not affect the outcome of the case. Therefore, defendant fails to establish plain error affecting his substantial rights.

## 4.  IMPROPER COMMENTS DURING CLOSING ARGUMENT

Defendant additionally contends that he was denied a fair trial based on the prosecutor's comments during closing argument. Defendant quotes portions of the prosecutor's closing argument, but he does not explain how the comments were improper or how they denied him a fair trial. Thus, defendant fails to establish plain error affecting substantial rights.

Nonetheless, the prosecutor's comments were not improper. Defendant quotes the prosecutor's argument that defendant does not get "special points" for testifying and that the point of defendant's testimony was to do "[d]amage control. Explain." These arguments were proper in light of defendant's testimony. To the extent the prosecutor argued defendant was not credible, "[a] prosecutor may . . . argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Defendant also quotes the prosecutor's argument that it was not easy for Ware to identify defendant as a murderer. The prosecutor was, however, permitted to argue that Ware was credible based on the evidence presented at trial. Defendant further quotes the prosecutor's argument that there was more than one person involved, and that defendant could have stopped, "[b]ut he didn't. He fired. And fired. And fired. And fired. And fired. And fired. And fired. And then he ran off." These arguments were proper based on the evidence that there were two groups of casings and that the victim was shot 12 times. Therefore, defendant fails to establish plain error affecting his substantial rights.

## 5.  CUMULATIVE EFFECT

Defendant contends that the cumulative effect of the prosecution's errors violated his right to due process. In light of our conclusions above, however, there are no errors to accumulate, and defendant's claim necessarily fails for that reason. See *Unger*, 278 Mich App at 258.

## C.  TRIAL COURT'S ERRORS

Defendant also argues on appeal that the trial court abused its discretion by failing to properly conduct a hearing pursuant to *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L

---

[6] Notably, these photographs that he now claims include him and the BB guns are the same photographs that were discussed below, i.e., the photographs that he claimed were not necessarily of him.

Ed 2d 1149 (1967).[7] We disagree. Because defendant never argued that the trial court improperly conducted the *Wade* hearing before the trial court, this argument is unpreserved for appellate review. *People v Danto*, 294 Mich App 596, 605; 822 NW2d 600 (2011) (citation and internal quotation marks omitted). Defendant never argued below that the hearing was not properly conducted. Therefore, this claim is unpreserved. "Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights." *Bosca*, 310 Mich App at 47.

Defendant cites the portion of the *Wade* hearing in which the trial court did not allow defense counsel to voir dire Officer McEntire about other witnesses who were asked to describe the shooter. The trial court stated that what other witnesses described did not have anything to do with the lineup at issue. Defense counsel argued that he was attempting to show that the lineup was suggestive because it did not include individuals with descriptions provided by other witnesses. Defendant, however, fails to explain how the trial court's decision was erroneous. To the extent defendant suggests that another witness's description of the shooter is a relevant factor in determining whether the identification was reliable,[8] defendant fails to provide any authority to support this argument. Defendant fails to establish plain error affecting his substantial rights.

To the extent defendant also argues that the cumulative effect of this error, coupled with its admission of the Facebook photographs and its denial of his new-trial motion, deprived him of his constitutional right to a fair trial, we reject that argument as well. Given that there were no errors in the trial court's rulings, there are no errors to accumulate. See *Unger*, 278 Mich App at 258.

## D. CUMULATIVE EFFECT OF ERRORS

Next, defendant contends that the cumulative effect of all of the errors identified in his Standard 4 Brief violated his right to due process. We disagree. Again, defendant has not established any errors. Therefore, his claim regarding the cumulative effect of the errors must fail. *Unger*, 278 Mich App at 258.

## E. ACTUAL AND LEGAL INNOCENCE

Finally, defendant contends that his right to due process was violated because he is actually and legally innocent. This issue was not raised below. Therefore, it is unpreserved. *Danto*, 294 Mich App at 605. "Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights." *Bosca*, 310 Mich App at 47. Defendant refers to the

---

[7] To the extent defendant also argues that the trial court abused its discretion by admitting the Facebook photographs and by denying his motion for a new trial based on Ware's credibility, we decline to address those arguments for a second time in light of our conclusions above.

[8] Defendant lists several factors relevant to whether an in-court identification is independently reliable; however, such inquiry is not at issue because Ware's pretrial identification was not excluded.

language of MCR 6.508(D), which provides that the court may waive the requirement of showing good cause "if it concludes that there is a significant possibility that the defendant is innocent of the crime." This court rule pertains to post-appeal relief and, therefore, is not applicable in this case. To the extent defendant claims a miscarriage of justice has occurred as a result of a constitutional violation, he has not established any constitutional violations warranting relief. Nor has defendant established an error in pleading or procedure that has resulted in a miscarriage of justice. See MCL 769.26.

Affirmed.


/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Colleen A. O'Brien