PEOPLE v HALL

Docket Nos. 81912, 81913. Argued October 6, 1988 (Calendar No. 13). Decided October 31, 1989.

Edward D. Hall was convicted by a jury in the Oakland Circuit Court, John N. O'Brien, J., of armed robbery and of being an habitual offender, fourth offense. The Court of Appeals, MAHER, P.J., and DOCTOROFF, J. (H. T. CONLIN, J., concurring in the result only), reversed in an unpublished opinion per curiam, finding that the admission of evidence of a shotgun seized from him at the time of his arrest and the admission of testimony of witnesses relating the circumstances of his arrest was improper under MRE 404(b) (Docket Nos. 94301, 98147). The people appeal.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, and an opinion by Justice BRICKLEY, the Supreme Court held:

Admission of a sawed-off shotgun as direct physical evidence of the commission of the armed robbery was proper under MRE 401, notwithstanding the fact that its mere possession was a distinct criminal offense. In addition, admission of the testimony of various witnesses regarding the circumstances surrounding the defendant's arrest was also proper under MRE 401 to establish possession and control of both the shotgun and a vehicle similar to that used in the robbery.

1. Generally, evidence of extrinsic crimes, wrongs, or acts of a defendant is inadmissible to prove that a defendant possessed a propensity to commit such acts. However, extrinsic-act evidence may be admitted under MRE 404(b) for other purposes. To test the admissibility of extrinsic-act evidence, the prosecution: must offer substantial proof that the defendant committed the extrinsic act; must identify a special quality or circumstance of the extrinsic act which tends to prove the fact or issue in dispute, thereby assuring that the evidence is probative of some fact other than the defendant's bad character; and must indicate in what way the evidence is material to the case. Thereafter, the trial court must conclude that the probative value of the evidence is not outweighed by the potential for unfair prejudice to the defendant.

2. In this case, evidence that the defendant possessed a

sawed-off shotgun at the time of his arrest was properly admitted under MRE 401, independently of MRE 404(b), as direct evidence of his identity as the gunman who committed the robbery. The fact that possession of the shotgun also constituted a separate crime, wrong, or act within the meaning of MRE 404(b) did not require its exclusion. The testimonial evidence regarding the defendant's actions prior to his arrest was relevant to connect him to both the shotgun and the car used in the robbery.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, also stated that, contrary to the Court of Appeals analysis in this case, evidence admissible under MRE 404(b) itself is not limited solely to evidence of crimes, wrongs, or acts that are similar to the charged offense. Rather, it is the purpose that the proffered evidence will serve that will dictate its requisite character. What is required is a special quality or circumstance of the bad act which supplies the link between the charged and uncharged offenses and assures that the evidence of the separate offense is probative of some fact other than the defendant's bad character. Where the prosecution uses similar acts to prove the identity of a defendant, the commonality of circumstances must be unique and distinctive. But where identity is sought to be shown not by the signature or modus operandi exception, but by a distinct mode, courts should not impose requirements that apply only to such exceptions on different methods of using evidence of other crimes to show identity. In this case, the relevance of the defendant's actions prior to arrest did not depend in any way on an inference derived from their similarity to his actions at the time of the robbery.

Justice CAVANAGH, concurring in the result of the majority, stated that, while concurring in the separate opinion of Justice LEVIN, he did not join in the conclusion that remand to the Court of Appeals is warranted. The evidence presented, other than the testimony regarding the circumstances surrounding the defendant's arrest, was sufficient to render any error in the admission of that testimony harmless.

Reversed.

Justice LEVIN, joined by Justice ARCHER, in a separate opinion, stated that the decision of the Court of Appeals should be vacated and the case remanded to the Court of Appeals for a determination of whether the testimony regarding the circumstances surrounding the defendant's arrest after the robbery and the testimony which tended to show that he was acting as if he were planning another robbery was harmless error. The

prosecutor could have fully established the defendant's knowing possession and control of both the shotgun and the car without such testimony.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Charles T. Burke* for the defendant.

BOYLE, J. Defendant Hall was convicted of armed robbery, MCL 750.529; MSA 28.797, following a jury trial. He claims error in the admission of a sawed-off shotgun seized from him at the time of his arrest and of testimony by various witnesses to the circumstances surrounding his arrest. We hold that, as direct physical evidence of the commission of the armed robbery, the shotgun was properly admitted notwithstanding the fact that mere possession of it was a distinct criminal offense. We also hold that the testimony of the various witnesses to the circumstances surrounding the defendant's arrest was admissible to establish the defendant's possession and control of both the shotgun and a vehicle similar to the one used in the charged robbery. In both instances, admissibility is governed by MRE 401 and not, as defendant claims, by MRE 404(b).

I

On November 23, 1984, the Video Bin, a videotape rental store owned by Thomas Grosman, was robbed by two men, one of whom was armed with a sawed-off shotgun. At the time of the robbery, the store was being operated by Mr. Grosman's two daughters, Tami and Tawni Grosman.

Tami Grosman testified that at approximately 1:50 P.M., two men entered the store. She identified the defendant as the person who carried a large brown grocery bag. The two men walked about the store for several minutes examining tapes and asking questions. After approximately ten minutes, defendant removed a sawed-off shotgun from the bag he was carrying, pointed it at the two girls, and told them to step away from the counter or they would be killed. The girls were ordered by defendant to a back room while the other man remained in the front of the store.

In the back room defendant replaced the gun in the grocery bag to conceal it from a customer who had entered the store. He then ordered the girls to walk back to the service area, and to give him all the cash from the cash register. The three then returned to the front of the store, where Tami removed the cash from the register and gave it to defendant. Tami then waited on the customer who had previously entered the store. At this point Thomas Grosman arrived, and was met at the door by defendant. As defendant passed Mr. Grosman, who was standing in the doorway, he pointed the shotgun at him and ordered him to get out of the way.

Tami positively identified the defendant as the man who had pointed the gun at her. Tawni Grosman also identified the defendant as the gunman. Thomas Grosman, the owner of the store, testified that upon arriving at the store on the day of the robbery he found a car parked in his parking space behind the store. He identified the vehicle as a rust-colored, mid-sized vehicle which was "[v]ery weathered and ratty." The vehicle had a vinyl top and temporary license sticker in the back window. He thought that the vehicle was either a Chevrolet Nova or Dodge Volare.

Mr. Grosman's testimony concerning the events inside the store corroborated the testimony of his daughters. He also identified the defendant as the man who pointed the gun at him. When the two men left the store, Mr. Grosman instructed Tami to telephone the police. He then went outside, where he saw the car that had been parked in his parking space hurriedly leave the parking ·lot. Seated in the vehicle were two men. He noticed that the vehicle had no license plates, but that a temporary sticker was affixed to the back window.

The customer who had entered the store during the robbery also testified at the trial. His version of events was substantially the same as that of the other witnesses, except that he identified defendant as the accomplice rather than the gunman.

Following the testimony of these witnesses, the prosecutor presented testimony concerning the defendant's arrest on an unrelated charge on June 26, 1985.[1] On that day the defendant was observed standing next to a dry cleaning store in a shopping center. In defendant's hand was a large brown bag. The state's first witness, Judge Henry,[2] testified that from his observation of defendant he surmised that the bag held by him contained a large pistol. Mr. Henry watched defendant approach a tan or rust-colored car. Mr. Henry then entered the dry cleaning store to drop off his laundry. He discussed his observations with the store manager. Upon leaving, he observed defendant sitting in the car and looking into the rearview mirror.

The store manager, Karen Hoffman, testified that she also observed the defendant approach the car, and place what appeared to be a bag into it

---

[1] Defendant was charged with carrying a concealed weapon, possession of a short-barreled shotgun, and habitual offender, fourth offense. MCL 769.12; MSA 28.1084.

[2] The witness indicated that his first name was Judge.

through an open window. Defendant then left his vehicle and headed toward a fast-food store, at which time Mrs. Hoffman's husband suggested that she call the police. Robert Hoffman's testimony was substantially the same as his wife's.

Detective Sergeant James Babbish of the Oak Park Police Department also testified against the defendant. He indicated that upon being dispatched to the shopping center he spoke with Mr. Hoffman, who pointed out a 1972 Chevrolet Nova. Defendant was at this time not in custody, and the vehicle in which he had been seated was unoccupied. Officer Babbish indicated that he looked through the open passenger-side window, where he discovered and seized a black plastic bag lying on the floor of the car. Inside this bag was a large brown grocery bag containing a sawed-off shotgun. A subsequent LEIN check of the vehicle indicated that it was registered to defendant. A business card from the Video Bin was found on the front seat of the vehicle.

Following his conviction for armed robbery, defendant argued in the Court of Appeals that the trial judge erred by allowing the introduction of the shotgun and the testimony of witnesses relating the circumstances of his arrest. Defendant claimed this was improper character evidence which did not qualify as a similar crime under MRE 404(b). A divided Court of Appeals agreed, and reversed his conviction.[3] Because this conviction was used to establish defendant's guilt on the supplemental habitual offender charge, that conviction was similarly reversed. This Court has granted leave to appeal. 430 Mich 857 (1988).

---

[3] *People v Hall,* unpublished opinion per curiam of the Court of Appeals, decided July 14, 1987 (Docket Nos. 94301, 98147).

II

Evidence of extrinsic crimes, wrongs, or acts of an individual generally is inadmissible in a criminal prosecution to prove that the defendant possessed a propensity to commit such acts. MRE 404(b). This rule stems from the concern that a jury will convict a defendant because of his bad character rather than on the strength of the state's evidence concerning the crime charged. *People v Golochowicz,* 413 Mich 298, 308; 319 NW2d 518 (1982).

This rule of exclusion, however, is not universal. Evidence of extrinsic crimes, wrongs, or acts of the accused is admissible as substantive evidence under some circumstances. MRE 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crime, wrongs, acts are contemporaneous with, or prior or subsequent to the crime charged.

To test the admissibility of extrinsic-act evidence under MRE 404(b), the proof must satisfy a four-part evidentiary safeguard established in *Golochowicz, supra.* The prosecutor first must offer substantial proof that the defendant committed the extrinsic act. Second, the prosecutor must identify the "special quality or circumstance" of the extrinsic act which tends to prove the fact or issue in dispute and thereby assures that the evidence is probative of some fact other than the

defendant's bad character.[4] Third, the prosecutor must indicate in what way the extrinsic-act evidence is material to the case. Finally, the trial judge must conclude that the probative value of the evidence is not outweighed by the potential for unfair prejudice to the defendant.

The Court of Appeals in this case found error on the part of the trial court in admitting the shotgun, together with the "circumstances of its seizure," because it concluded that the "other bad act" of possession of a concealed, short-barreled shotgun that the gun and the testimony established did not meet the "signature crime" standard of admissibility described in *Golochowicz* for proof of identity under MRE 404(b). We disagree that the trial court erred in admitting this evidence. While we do not dispute the Court of Appeals determination that the prosecution failed to establish a "signature crime" relationship between the evidence sought to be admitted and the charged offense, in our view both the gun and the testimony were relevant and admissible evidence under MRE 401, without reference to MRE 404(b).[5]

A

Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that

---

[4] Under MRE 404(b), any fact other than a defendant's propensity toward criminal activity may be proved by extrinsic acts so long as the fact proved is actually disputed.

[5] MRE 401 provides in full:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

offense. For example, in *United States v Woods,* 613 F2d 629, 636 (CA 6, 1980), the United States Court of Appeals for the Sixth Circuit held that where the testimony of witnesses to a bank robbery indicated that when they entered the bank the robbers had a pistol and a sawed-off shotgun, and the confession of an accomplice indicated that defendant was in possession of the shotgun, evidence that at the time of his arrest the defendant possessed two .38 caliber revolvers and a sawed-off shotgun was relevant and admissible under FRE 401 apart from FRE 404(b), on the issue of identification. The *Woods* court reasoned:

> A principal issue at trial was the identification of the defendants as the bank robbers. The proof that upon arrest by the police . . . Underwood had .38 caliber revolvers [and] a sawed-off shotgun . . . in his possession was relevant to that issue as the term is defined in F.R. Evid. 401.[6] As evidence which could link the defendants to the crime, it tended to make their participation in the robbery "more probable . . . than it would be without the evidence."

See also *United States v Robinson,* 560 F2d 507 (CA 2, 1977) (substantially similar facts and discussion); *United States v McKinley,* 158 US App DC 280, 281; 485 F2d 1059 (1973) (sawed-off shotgun similar to that used in the crime); *United States v Cunningham,* 423 F2d 1269, 1276 (CA 4, 1970) (similarity of weapons); *Walker v United States,* 490 F2d 683, 684 (CA 8, 1974) (evidence of a similar weapon "has been regularly admitted as relevant").

In this case, the prosecutor presented several witnesses whose testimony served to link the shotgun to the defendant and thus to establish his

---

[6] Federal Rule of Evidence 401 is identical with MRE 401.

identity as the armed robber at the Video Bin. As foundation for the admission at trial of the shotgun itself, Tami Grosman, who was present during the charged robbery, testified that the gun looked like the same gun defendant had used in that robbery. Officer James Babbish testified that the gun sought to be admitted was the one seized from the defendant's car just prior to his later arrest on June 26, 1985. The shotgun was admitted into evidence after Officer Babbish's testimony.[7]

In addition to these witnesses, the prosecutor submitted the testimony of the various witnesses to the circumstances surrounding defendant's arrest and the seizure of the shotgun. The purpose of this testimony was to establish defendant's *knowing* possession and control of, rather than mere proximity to, both the shotgun and a car similar to that described by Thomas Grosman as that used in the charged robbery. As noted above, Judge Henry and Karen Hoffman testified that they saw the defendant in possession of a brown bag like the one in which the shotgun was found. Mr. Henry testified that from the way defendant carried the bag, he thought there was a gun in it. Mrs. Hoffman saw the defendant place the bag into his car. Mr. Henry had earlier seen the defendant sitting in the driver's seat of the car.

In our view, both the gun and the testimonial evidence of defendant's possession of it and the car, under the rationale employed in *Woods, supra,* were clearly relevant to make the defendant's identity as the gunman in the charged robbery

---

[7] Note that the shotgun in this case was not objectionable because it was never conclusively identified as the gun that was actually used in the Video Bin robbery. As this Court held in *People v Kelly,* 386 Mich 330, 338; 192 NW2d 494 (1971), to be admissible the gun seized from a defendant need only be shown to have been in the defendant's possession and of the same kind as that used during the charged offense. See also *People v Howard,* 391 Mich 597; 218 NW2d 20 (1974).

"more probable . . . than it would be without the evidence." MRE 401. As this Court observed in *People v Spillman,* 399 Mich 313, 320; 249 NW2d 73 (1976), in which it approved the use of evidence that the defendant had committed a robbery of a bar owned by the complainant three weeks before the charged offense, "[t]he prior viewing of the defendant wearing the same coat, holding the same handgun, occurring under similar circumstances, tends to make this witness' identification of defendant more credible."

Nor does MRE 404(b) act to preclude the evidence. The fact that establishing defendant's possession of the shotgun also necessarily constitutes evidence of a separate crime, wrong, or act (possession of a sawed-off shotgun) does not alone bring the proof within the compass of MRE 404 preclusion. Unlike the "exceptions" contained in MRE 404(b), in which relevance rests on a circumstantial inference from the other act to the fact in issue, the shotgun itself was equally as direct an item of evidence of defendant's commission of the charged robbery in this case as marked bills or identifiable jewelry would be in another, while the testimony by various witnesses to the circumstances of its seizure was relevant to connect the defendant to both it and the car.

In short, the evidence of defendant's possession of a shotgun, and the gun itself, were admissible in the same way that evidence of defendant's ownership of a rust-colored Nova like the one used in the robbery was admissible. Even if the Nova in defendant's possession had turned out to be stolen, so that his possession of it, like his possession of the shotgun, was illegal, it could not be argued that the car, or evidence of defendant's possession of it, must be excluded. Evidence of defendant's possession of the shotgun in this case is admissible

under MRE 401 as evidence of defendant's com-
mission of the charged robbery, quite apart from
also being evidence of other crimes, wrongs, or
acts under MRE 404(b).

In reaching this conclusion, we are mindful of
defendant's contention that, even if the evidence of
his possession of the shotgun and the car was
otherwise admissible, the testimony of these wit-
nesses was unnecessary "prejudicial detail" that
should have been excluded. It would have sufficed,
he argues, for the prosecution simply to have
stated that the gun had been found by the police
in a car that had been recently occupied by the
defendant. We disagree.

While the trial judge under MRE 403 could have
limited the possible prejudicial effect of the testi-
mony of these witnesses by so restricting the
prosecutor's proofs, we are unable to conclude that
his failure to do so was an abuse of discretion.
*People v Golochowicz, supra,* p 322. Had the evi-
dence been restricted to the officer's testimony, it
would have permitted only the inference that since
the car was registered to the defendant he pos-
sessed the gun found in the back seat. The jury
would have been deprived, then, of relevant evi-
dence concerning the defendant's knowing posses-
sion and control of both the shotgun and the car.

To the extent that such testimony was prejudi-
cial to defendant, we find any prejudicial effect
outweighed by the clear probative value of the
evidence. The testimony, as explained above, was
mostly foundational, necessary to show the defen-
dant's knowing possession and control of the car
and the gun. Defendant's only crimes on the date
of his arrest were carrying a concealed weapon
and possession of a short-barreled shotgun. It is
unlikely that the jury was confused by the intro-
duction of this evidence. Both parties' theories of

the case were relatively simple, and the jury was undoubtedly well aware that the defendant was on trial only for the Video Bin robbery.[8] Under such circumstances, we cannot say that the defendant here was unduly prejudiced by the admission of this evidence.

B

While we find that the contested evidence in this case was relevant evidence under MRE 401, and therefore reverse the Court of Appeals ruling that the evidence was precluded by MRE 404(b), we feel constrained to specifically address, if only briefly, that Court's analysis of this case under MRE 404(b). As stated above, the Court of Appeals agreed with the defendant that where identity is the issue in dispute, *Golochowicz* limits MRE 404(b) evidence to proof of highly similar acts. We disagree. MRE 404(b) is not limited solely to evidence of crimes, wrongs, or acts that are *similar* to the charged offense. Rather, it is the purpose that the proffered evidence will serve, that is, the basis for its relevancy, that will dictate its requisite character. *United States v Dunn,* 805 F2d 1275, 1280 (CA 6, 1986).

Although frequently designated by the misnomer "similar act evidence," neither MRE 404(b) nor the statute on which it is based, MCL 768.27; MSA 28.1050, requires similarity in all cases.

---

[8] Moreover, our review of the record indicates that there was a substantial effort made at the trial to limit the possible prejudicial effect of the testimony of these witnesses by restricting questioning to the factual circumstances leading to the defendant's arrest, and to discourage witnesses' subjective statements as to their perception of defendant's activities. We conclude that the trial court succeeded in that endeavor. To the extent that there were statements made during the examination of these witnesses that were not directly probative of the issues of possession and control of the gun and the car, as Justice LEVIN contends, we find that any error in their admission can only be seen, as Justice CAVANAGH concludes, as harmless.

What is required is a special quality or circumstance of the bad act which "supplies the link between [the charged and uncharged offenses] and assures thereby that evidence of the separate offense is probative of some fact other than the defendant's bad character." *People v Golochowicz, supra,* p 310.

To be sure, where the prosecution uses similar acts to prove the identity of a perpetrator, the commonality of circumstances must be unique and *distinctive.* But this is only one way in which evidence of other crimes may serve to identify the actor. Where identity is sought to be shown not by the signature or modus operandi exception, but by a distinct mode, such as capacity or opportunity, "[i]t is important that courts recognize these different modes so as not to impose requirements, such as distinctive similarity, that apply only to the modus operandi method of identification, on different methods of using other crimes evidence to show identity." 22 Wright & Graham, Federal Practice & Procedure, § 5246, p 512.

The Court of Appeals thus misread our ruling in *Golochowicz* as imposing a similarity requirement on evidence of other crimes, wrongs, or acts that would otherwise be admissible for a proper purpose under MRE 404(b). "Relevant evidence under Rule 404(b) should, therefore, not always be excluded because it does not qualify under a similarity requirement. Other bad acts disclosed by evidence would have to be similar only if a basis for the relevance of the evidence is similarity." *United States v Czarnecki,* 552 F2d 698, 702 (CA 6, 1977) (citation omitted).[9] In short, a similar act need not

---

[9] See also *United States v Riggins,* 539 F2d 682, 683 (CA 9, 1976); *United States v Hearst,* 563 F2d 1331, 1336 (CA 9, 1977); *United States v Johnson,* 542 F2d 230, 234, n 10 (CA 5, 1976); *United States v Barrett,* 539 F2d 244, 248 (CA 1, 1976); *United States v McFadyen-*

be proved in every instance in which MRE 404(b) evidence is used.[10]

Since we find this evidence to be admissible independently of MRE 404(b), we need not address the application of that rule to the facts before us. We note, however, that several courts have specifically addressed the admissibility of such evidence under FRE 404(b).[11] For example, the Sixth Circuit in *Woods, supra,* found that defendant's possession of the shotgun "could have been admissible under [Federal Rule of Evidence] 404 on the independent ground that it tended to show he had the 'opportunity' to commit the bank robbery, since he had access to weapons similar to those used to commit it." *Id.,* p 636. Quoting *United States v Ravich,* 421 F2d 1196 (CA 2, 1970), cert den 400 US 834 (1970), the *Woods* court reasoned:

> "Direct evidence of such possession would have been relevant to establish opportunity or preparation to commit the crime charged, and thus would have tended to prove the identity of the robbers, the only real issue in this trial." [*Id.*]

The court in *Woods* did not indicate that a "signature crime" standard was to be applied to such

*Snider,* 552 F2d 1178, 1183 (CA 6, 1977); *United States v Longoria,* 624 F2d 66, 69 (CA 9, 1980).

[10] As the United States Court of Appeals for the Sixth Circuit observed in *United States v Czarnecki, supra,* one of the purposes of Rule 404(b) was to broaden admissibility. Thus, while substantial similarity is a consideration under 404(b), the considerations listed in the rule do not "constitute a rigid checklist in every case." *Id.,* p 702.

[11] MRE 404(b) is substantially similar to Federal Rule of Evidence 404(b), which provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

evidence since the issue at trial was identity. See also *United States v Robinson, supra.*

In this case, the testimonial evidence regarding defendant's actions prior to his arrest is relevant to connect the defendant to both the shotgun and the car. The relevance of defendant's actions prior to arrest does not depend in any way on an inference derived from their similarity to his actions at the time of the robbery. This is not a situation in which the other acts become relevant only by virtue of their similarity to the charged offense, in which case similarity is the special link required by *Golochowicz.* Where the basis for relevance to identity is not the similarity of the act, all that is required under *Golochowicz,* is a "special quality or circumstance" linking the extrinsic act and the charged offense. Here, the shotgun and the vehicle provided the link that assures that the evidence had a purpose other than proving propensity.

III

Evidence that the defendant possessed a sawed-off shotgun at the time of his arrest was properly admitted in this case under MRE 401 as direct evidence of defendant's identity as the gunman in the charged robbery. The fact that the possession of the shotgun also constituted a separate crime, wrong, or act within the meaning of MRE 404(b) did not require its exclusion. The Court of Appeals thus erred in reversing the defendant's conviction. We reverse that decision and reinstate the defendant's conviction of armed robbery, as well as his conviction of the supplemental charge of being an habitual offender, fourth offense.

Riley, C.J., and Griffin, J., concurred with Boyle, J.

BRICKLEY, J. (*concurring*). With the exception of Section II(B) which is unnecessary to the decision of this case, I concur in the analysis and result of the opinion of Justice BOYLE.

CAVANAGH, J. (*concurring*). I concur with the separate opinion of my brother LEVIN. However, I do not join in his conclusion that a remand to the Court of Appeals is warranted. Identification testimony of three eyewitnesses, fingerprints, identification of defendant's car, and the Video Bin business card found in defendant's vehicle is sufficient evidence to satisfy me that any error in the admission of testimony regarding the circumstances surrounding defendant's subsequent arrest was harmless. Accordingly, I concur with the majority in reversal.

LEVIN, J. (*separate opinion*). I agree with the majority that Hall's possession of a shotgun may[1] have been "admissible in the same way that evidence of defendant's ownership of a rust-colored Nova like the one used in the robbery was admissible."[2] On the assumption that the evidence was so admissible, there was no abuse of discretion in allowing witnesses to testify that, as stated by the majority, they actually "saw the defendant in possession of a brown bag like the one in which the shotgun was found. Mr. Henry testified that from the way defendant carried the bag, he thought there was a gun in it. Mrs. Hoffman saw the defendant place the bag into his car. Mr.

---

[1] But see *People v Howard,* 391 Mich 597, 607; 218 NW2d 20 (1974) (LEVIN, J., concurring), stating that guns found some time after the commission of a crime that might have been used to commit the crime are not invariably admissible. The shotgun there, as here, was not "part of a chain of circumstantial evidence which in the aggregate [was] sufficient to support a verdict or finding of guilty." *Id.,* p 610.

[2] *Ante,* p 583.

Henry had earlier seen the defendant sitting in the driver's seat of the car."[3]

I write separately because, in all events, there was no need, in order to establish Hall's possession and control of the shotgun, for Robert Hoffman to testify that Hall's conduct immediately before he was arrested was such as to so arouse Hoffman's suspicion that he had asked his wife, Karen Hoffman, to call the police. There was no need for Henry to testify that he had taken the license plate number of the Nova or for Karen Hoffman to testify regarding the events that led her to telephone the police.

The prosecutor could have fully established the defendant's knowing possession and control of both the shotgun and the car without the testimony of Henry, and of Robert and Karen Hoffman, tending to show that Hall was acting as if he were planning another robbery.

I would vacate the opinion of the Court of Appeals[4] and remand the case to it for a determination of whether the testimony tending to show that Hall was planning another robbery was harm-

---

[3] *Ante,* p 582. I do not therefore contend that it would have sufficed "for the prosecution simply to have stated that the gun had been found by the police in a car that had been recently occupied by the defendant." *Ante,* p 584.

[4] The opinion of the Court of Appeals is unpublished and hence the MRE 404(b) analysis of the Court of Appeals is not precedentially binding under the rule of stare decisis. MCR 7.215(C)(1).

It is therefore sufficient to say that MRE 404(b) is inapplicable in the instant case, and there is no need to consider in the abstract the possible application of MRE 404(b) in other cases.

I do, however, agree with the majority that the applicable rules are MRE 401, defining relevant evidence; MRE 402, providing that relevant evidence is generally admissible; and MRE 403, providing that relevant evidence may be excluded on grounds of prejudice, confusion, or waste of time.

less error, as the people contended in their petition for rehearing in the Court of Appeals.[5]

ARCHER, J., concurred with LEVIN, J.

---

[5] The issue whether there was harmless error should not be considered for the first time on appeal to this Court.