# Court of Appeals, State of Michigan

# ORDER

People of MI v Sammy Lee Pettes

Docket No.      330711

LC No.          15-001023-01-FC

Michael J. Kelly
Presiding Judge

Jane M. Beckering

Douglas B. Shapiro
Judges

The Court orders that the May 25, 2017 opinion is hereby AMENDED to correct a clerical error. On page 5 of the opinion, the last paragraph is amended to read: The trial court did not abuse its discretion in admitting the Facebook photos of defendant or in overruling defendant's objections to Johnson's testimony of receiving threats on account of her testimony, and, therefore, defendant is not entitled to relief on either basis.

In all other respects, the May 25, 2017 opinion remains unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

MAY 26 2017
_____
Date

_____
Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

SAMMY LEE PETTES,

　　　　　Defendant-Appellant.

UNPUBLISHED
May 25, 2017

No. 330711
Wayne Circuit Court
LC No. 15-001023-01-FC

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 15 to 30 years' imprisonment for the second-degree murder conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from a conflict that occurred on the afternoon of October 13, 2014. While there were variations in the testimony, each witness to the events described a dispute between two groups. The victim, Joseph Tanksley Jr (Joe Jr), and his brother, Javontae Walker, resided with their mother on the even-numbered side of Beaconsfield Street in Detroit. Their father, Joseph Tanksley Sr (Joe Sr) was visiting on the day of the incident. The group containing defendant was made up of several young men who were visiting or planning to visit a house on the odd-numbered side of the street just opposite to the victim's home. The incident began when Javiez Maton, a friend of Walker's, walked down the street between the two houses with his girlfriend, Carissma Funches. Several individuals in the group on the odd-numbered side yelled a vulgar comment at Funches. Maton responded appropriately, and Walker, who had observed the interaction, also responded verbally. One of the individuals on the odd-numbered side then jumped off of the porch and put a pistol to Maton's head. Over the next several minutes, additional individuals, including a young woman named Talaya Johnson, joined the group on the odd-numbered side of Beaconsfield, and several other individuals, including Walker's father and Joe Jr., the victim, joined the group of individuals on the even-numbered side of the street as the verbal altercation continued. The man threatening Maton with the pistol pulled back, but, several minutes later, a firefight erupted. Joe Jr. was shot in the firefight and died from his wounds that same day.

-1-

Talaya Johnson later identified defendant and another man, Teandre Kennedy, as the shooters from the odd side of the street, and Walker, who admitted to retaliating, as the only shooter from the even side of the street.[1]  Johnson stated that defendant was carrying a dark-colored six shot revolver and that Kennedy was carrying a silver automatic.  The bullet ultimately recovered from Joe Jr.'s body was a revolver round.

The trial turned largely on the issue of identification.  Defendant was identified as the shooter at trial by Joe Sr., Walker, and Johnson.  Joe Sr. and Walker were impeached on the basis of the fact that both had failed to identify defendant in a line-up shortly after the incident.  Joe Sr. offered no explanation for his failure to identify the defendant at the line-up.  Walker testified that he purposely did not identify defendant because he wanted to take justice into his own hands and did not want the police involved.  Johnson, who did identify defendant at the line-up, was impeached by testimony from several other prosecution witnesses that disputed her claim that she attempted to prevent the shooting and instead testified that she urged the group on the odd-numbered side of the street to start shooting.

Defendant's theory at trial was that he was not present at the incident and that he was home with his mother, who offered alibi testimony.  Defendant also relied on the fact that out of eight witnesses who viewed the line-up, only Johnson identified him; the other seven did not identify him as the shooter or even as having been present.  The prosecution explained the lack of line-up identifications as due to the fact that defendant had an unusual hairstyle and, because they could not find any other line-up participants with that hair style, they had all the participants in the line-up wear hats in order to avoid a situation where defendant obviously stood out from the others.  As a result, the most salient characteristic of the defendant was not available for the witnesses to see during the line-up.

Defendant raises two issues on appeal.  First, that the trial court abused its discretion when it allowed the admission of two photographs taken from what the prosecution contended was defendant's Facebook page each of which depicted defendant holding a handgun – an automatic in one picture and a revolver in the other.  Defendant argues that the photographs were irrelevant, lacked an adequate foundation, constituted inadmissible hearsay, were offered for an improper propensity purpose under MRE 404(b), and were unfairly prejudicial under MRE 403.  We disagree.[2]

---

[1] Walker and Kennedy later pleaded guilty to charges for their involvement in the Beaconsfield shootout.

[2] We review a trial court's decisions regarding the admissibility of evidence, including other acts evidence, for an abuse of discretion.  *People v Dobek*, 274 Mich App 58, 84-85; 732 NW2d 546 (2007).  A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes."  *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010).  "Because an abuse of discretion standard contemplates that there may be more than a single correct outcome, there is no abuse of discretion where the evidentiary question is a close one."  *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009).

The trial court did not err when it determined that the Facebook images depicting defendant were relevant. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, whether defendant had access to a revolver was relevant. "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989).

Defendant also argues that the admission of the photographs violated MRE 404(b). The prosecution had filed a motion to admit them under MRE 404(b), and the trial court found that the photographs met the requirements of that rule. While the actions of the prosecutor and the trial court were prudent, we conclude that MRE 404(b) was not applicable in these circumstances and that it was not necessary to review the photographs for compliance with that rule. The photographs were direct evidence of defendant's access to a gun of the same type used in the shooting. More to the point, they were not proof of any other crime nor were they even proof of a bad act unless one defines holding a gun or having access to a gun to be a bad act. "If the proffered other acts evidence is logically relevant, and does not involve the intermediate inference of character," as in this case, "Rule 404(b) is not implicated." *People v VanderVliet*, 444 Mich 52, 64; 508 NW2d 114 (1993).

Defendant's argument that the Facebook images were inadmissible for lack of an adequate foundation also fails. A piece of evidence must be authenticated before it may be admitted. *People v McDade*, 301 Mich App 343, 352; 836 NW2d 266 (2013). MRE 901(a) governs the authentication of evidence, and it provides:

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

This evidence can come from a witness with knowledge, MRE 901(b)(1), or can be ascertained from "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," MRE 901(b)(4). The officer-in-charge, Khary Mason, testified that he located the images on a Facebook page bearing defendant's name and the name of defendant's gang, which included photographs of an individual Mason recognized as defendant. This testimony was sufficient to authenticate the photographs. Further, the challenged images were published to the jury along with a screenshot of the main Facebook page. The jurors, who could clearly see defendant at trial, were capable of determining whether the Facebook page belonged to defendant and whether the images actually depicted him.[3] Defendant correctly argues that, especially in light of the fact that his name was spelled incorrectly on the Facebook main page, it was possible that the Facebook page did not belong to

---

[3] On appeal, defendant also argues that the Facebook photographs were inadmissible hearsay. However, because a photograph is neither a statement nor nonverbal conduct intended as an assertion the hearsay rule is inapplicable. MRE 801.

him. However, when the foundational requirement of MRE 901(a) has been satisfied, as it has here, any failure to show complete authentication affects the weight of the evidence and not its admissibility. *People v White*, 208 Mich App 126, 132-133; 527 NW2d 34 (1994).

Finally, defendant argues that the Facebook photographs were unfairly prejudicial because there was no evidence proving that the guns in the photographs were the guns actually used during the commission of the crime and because the other evidence of defendant's guilt was so weak that the Facebook photographs likely "tipped the scale" against him at trial. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

> Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008) (citations omitted).]

Contrary to defendant's argument, the Facebook images were significantly probative of his access to a handgun of the type used to shoot the victim and of his access to a gun of the type used by his alleged confederate. This evidence was particularly relevant in light of the fact that defendant's identity as the shooter was at issue in this case. In addition, evidence of defendant's possession of the type of weapons used in the crime could not have been proven in any other way, as no weapons were recovered, and defendant exercised his right not to testify at trial. As to prejudice, the evidence had little potential for confusing or misleading the jury. First, while the guns in the Facebook photos were of the type used in the crime, it was made clear to the jury by the prosecution that there was no forensic proof that the guns in the photos were the ones actually involved in the crime. Second, the jury was accurately instructed to disregard any evidence of prior improper acts committed by defendant. The trial court did not abuse its discretion when it determined that the prejudicial nature of the Facebook images did not substantially outweigh their probative value. Accordingly we reject defendant's argument that we should reverse his conviction based upon the admission of the Facebook photos.

Defendant's other argument on appeal concerns the testimony of Talaya Johnson. As noted above, Johnson along with the victim's father and brother identified defendant at trial. However, it was only Johnson who had also identified defendant at the corporeal line-up.

At the outset of Johnson's testimony, the prosecutor asked her who fired the shots, and she stated that she could not remember. Only after the prosecutor showed Johnson the statement she gave pursuant to an investigative subpoena and asked if it refreshed her memory did she testify that it was defendant who fired the first shot. Later in the direct exam, the prosecutor stated that Johnson seemed not to be feeling well, a fact which she confirmed. The prosecutor

then went into a series of questions regarding Johnson's behavior on the day of the preliminary exam. It was brought out that she had hidden in the courthouse bathroom during that proceeding and did not testify. The prosecutor asked her to explain that behavior. Johnson then testified that she and her family had moved to Georgia because "after I talked to the cops I had to move." She explained that during defendant's preliminary exam, her brother called her and told her that defendant's girlfriend, told him that "she was going to send someone to my mom's house to shoot her house up."

The trial court overruled hearsay and prejudice objections to this testimony. It concluded that although the alleged report given to her by her brother was an out-of-court statement, it was not admitted for the truth of the matter asserted. Rather, the court concluded that it was admitted to explain Johnson's fearful state of mind. Given that Johnson initially testified that she could not remember who the shooter was, the prosecution was entitled to present evidence that this failure of memory was not due to doubts about the facts, but due to fear of retribution. Therefore, the trial court's ruling that the statement was offered not for the truth of the matter asserted but for its effect on the listener, was not an abuse of discretion.

We agree that the testimony about the alleged threats carried with it a significant risk of prejudice as it strongly suggested that whoever made the threats was worthy of punishment for doing so. However, Johnson did not testify that the threats came from defendant or even on his behalf. In addition, the jury was given standard instructions about evaluation of a witness's testimony including the relevancy of threats or promises made to a witness and that the jury was not to consider whether defendant was a bad person or had committed any other crimes.

Given the potential for prejudice, it would have been well within the trial court's discretion to exclude the testimony about the alleged threats. However, for the reasons just reviewed, we cannot say that it was an abuse of discretion for the trial court to have allowed the jury to hear the testimony. The trial court had the opportunity to observe Johnson's demeanor, which we do not, and it made a reasonable judgment that the testimony was necessary for the jury to properly evaluate her testimony, which was central to the case.

The prosecution did not abuse its discretion in admitting the Facebook photos of defendant or in overruling defendant's objections to Johnson's testimony of receiving threats on account of her testimony, and, therefore, defendant is not entitled to relief on either basis.

Affirmed.


/s/ Michael J. Kelly
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro

-5-