# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LAWRENCE ISSAC MCCREE,

      Defendant-Appellant.

UNPUBLISHED
December 13, 2018

No. 339802
Wayne Circuit Court
LC No. 16-008446-01-FC

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to 30 to 50 years in prison for the second-degree murder conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm defendant's convictions, but remand for resentencing.

This case arose from the fatal shooting of Deanthony Walters (the victim) on September 4, 2016, in Detroit. At a bench trial, the prosecution presented the eyewitness testimony of defendant's ex-girlfriend, Chelinda Fomby, that defendant shot the victim outside her home. Defendant's theory at trial was misidentification. The trial court found insufficient evidence that defendant was "lying in wait" to support guilt with regard to first-degree premediated murder, but convicted defendant of second-degree murder and felony-firearm. This appeal followed.

## I. SEIZURE OF DEFENDANT'S CELLULAR TELEPHONE

First, defendant argues that the trial court erred by denying his motion to suppress based on the seizure of his cellular telephone from his friend, Derrick Burgess, who was on probation. Although Burgess *gave* the telephone to the police, defendant appears to be arguing that this relinquishment was done under duress when the police confronted Burgess.

---

[1] The trial court found defendant not guilty of first-degree premeditated murder, MCL 750.316(1)(a).

-1-

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Defendant argued below that Burgess did not have actual or apparent authority to consent to the seizure of the telephone. He argued that Burgess was a bailee who was holding the telephone for defendant. The trial court denied the motion to suppress on the basis that there was no bailment, Burgess consented to giving the telephone to the police and, in addition, defendant did not have an expectation of privacy in someone else's home, from where the item was taken. On appeal, defendant raises a new argument—that the police lacked reasonable suspicion to believe that Burgess was engaged in any criminal activity. Defendant's argument is not a model of clarity, but, based on the caselaw he cites, he appears to be arguing that because of this alleged lack of reasonable suspicion, the police should not have searched or attempted to search Burgess's home or person. Because this argument was not raised below, it is unpreserved.

This Court reviews de novo a trial court's ultimate decision on a motion to suppress because of an alleged constitutional violation. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). Unpreserved claims of constitutional error are reviewed for plain error affecting defendant's substantial rights. *People v Morris*, 314 Mich App 399, 404; 886 NW2d 910 (2016).

In *People v Antwine*, 293 Mich App 192, 194-195; 809 NW2d 439 (2011), this Court stated:

> The Fourth Amendment of the United Stated Constitution and article 1, § 11 of the Michigan Constitution prohibit unreasonable searches and seizures. The Michigan constitutional provision is generally construed to afford the same protections as the Fourth Amendment. [T]he Fourth Amendment protects people, as opposed to places or areas . . . . Accordingly, a search for purposes of the Fourth Amendment occurs when the government intrudes on an individual's reasonable, or justifiable, expectation of privacy. Whether an expectation of privacy is reasonable depends on two questions. First, did the individual exhibit an actual, subjective expectation of privacy? Second, was the actual expectation one that society recognizes as reasonable? Whether the expectation exists, both subjectively and objectively, depends on the totality of the circumstances surrounding the intrusion. [Citations and quotation marks omitted.]

"Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Mead (On Remand)*, 320 Mich App 613, 622; 908 NW2d 555 (2017) (citations and quotation marks omitted). For example, " '[w]hen an officer has reasonable suspicion that a probationer *subject to a search condition* is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable.' " *Mahdi*, 317 Mich App at 465, quoting *United States v Knights*, 534 US 112, 121; 122 S Ct 587; 151 L Ed 2d 497 (2001) (emphasis added in *Mahdi*).

"Fourth Amendment protections apply only when a person has an expectation of privacy in the searched property." *Mead*, 320 Mich App at 622. "The right to be free from unreasonable

searches and seizures is personal, and the right cannot be invoked by a third party." *Mahdi*, 317 Mich App at 458-459.

> *For an individual to assert standing to challenge a search, the individual must have had a legitimate expectation of privacy in the place or location searched*, which expectation society recognizes as reasonable. A court determines the issue of standing by examining the totality of the circumstances, and a defendant bears the burden of establishing that he has standing. [*Id*. at 459 (citations and quotation marks omitted; emphasis added).]

Relevant to the determination of standing are:

> ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. [*Id*. (citations and quotation marks omitted).]

On appeal, defendant *does not challenge* the trial court's finding that he did not have an expectation of privacy in Burgess's home. As such, to the extent that defendant is arguing that the police had no basis to search Burgess's home, defendant does not have standing to make this argument.[2] In addition, defendant clearly had no expectation of privacy with regard to Burgess's person and therefore no standing to challenge a search of him. The trial court did not err by denying defendant's motion to suppress the evidence in question.

## II. ADMISSION OF PHOTOGRAPH

Next, defendant argues that reversal is required because the trial court admitted an allegedly prejudicial photograph of him holding a gun. We disagree.

"A decision whether to admit photographs is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *People v Head*, 323 Mich App 526, 539-540; 917 NW2d 752 (2018) (citation and quotation marks omitted). "An abuse of discretion occurs when the trial court reaches a result that is outside the range of principled outcomes." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

"A proper foundation for the admission of photographs is made if someone who is familiar from personal observation of the scene or person photographed testifies that the photograph is an accurate representation of the scene or person." *In re Robinson*, 180 Mich App 454, 460; 447 NW2d 765 (1989). "Relevant evidence is generally admissible. MRE 402. Relevant evidence means evidence having any tendency to make the existence of any fact that is

---

[2] Although defendant had a legitimate expectation of privacy in the contents of the telephone, *id*. at 458, the police obtained a search warrant before searching the contents.

of consequence to the determination of the action more probable or less probable than it would be without the evidence. MRE 401." *Head*, 323 Mich App at 540 (quotation marks omitted). MRE 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "All relevant evidence is prejudicial to some extent. Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence. Thus, [p]hotographic evidence is generally admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403." *Head*, 323 Mich App at 541 (citations and quotation marks omitted).

In this case, a proper foundation for the admission of the photograph was made because Fomby, who was familiar from personal observation with defendant and the gun used in the crime, testified that the photograph accurately reflected defendant holding the gun used in the crime. See *In re Robinson*, 180 Mich App at 460. Moreover, contrary to defendant's assertion, the photograph of him holding a gun that was at least similar to the one used in the crime was relevant. In *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989), the Michigan Supreme Court stated that "[e]vidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense." The Court noted that "to be admissible the gun seized from a defendant need only be shown to have been in the defendant's possession and of the same kind as that used during the charged offense." *Id*. at 582 n 7. See also *People v Howard*, 391 Mich 597, 604; 218 NW2d 20 (1974) ("The fact that defendant had access to a sawed-off shotgun which at a minimum was similar to the one used in the commission of the crime is adequate at least to establish relevancy."). Fomby testified that the photograph showed defendant holding the gun that she believed was used in the shooting. Therefore, the photograph was relevant evidence that defendant committed the crime.

Further, while the trial court did not expressly address the prejudicial effect of the photograph, the danger of unfair prejudice was low because defendant was tried before a judge, not a jury. See, generally, *People v Parker*, 319 Mich App 664, 672; 903 NW2d 405 (2017) (discussing "trained jurist[s]").

The trial court did not err by admitting the photograph, and even if it had, there would be no basis for reversal because, while the trial court noted the existence of the photograph, it did not rely on the photograph in making its findings regarding the elements of the crimes. See *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (citation and quotation marks omitted) (discussing the harmless-error standard for evidentiary errors). There is no basis for reversal.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his convictions. We disagree.

"This Court reviews de novo a challenge to the sufficiency of the evidence in a bench trial." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). This Court

must view the evidence "in a light most favorable to the prosecution to determine whether the trial court could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. at 474. In *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016), this Court stated:

> In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of the witnesses. All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime. [Citations omitted.]

Defendant was convicted of second-degree murder and felony-firearm. The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Bergman*, 312 Mich App 471, 487; 879 NW2d 278 (2015) (citation and quotation marks omitted). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Bass*, 317 Mich App 241, 268-269; 893 NW2d 140 (2016) (citation and quotation marks omitted). "[I]dentity is an element of every offense." *Id*. at 263 (citation and quotation marks omitted).

With regard to his second-degree murder conviction, defendant only challenges his identity as the perpetrator. In particular, he argues that Fomby admitted that she relied in part on the way that the assailant walked to conclude that it was defendant, and said that defendant was making an angry look that she had never seen before, which suggested that maybe the assailant was not defendant. Although Fomby had never before seen defendant make the angry facial expression that she observed, she testified that it did not make her think that it was not defendant. She identified defendant based on his face, his clothing, the way he walked, and his height. While Fomby's identification was based in part on the way that the assailant walked, she expressly testified that she saw defendant's face. She further testified that she was close enough to defendant that he could have opened the door of the car she was occupying. There was also a streetlight illuminated over the car. The trial court found that Fomby's testimony was credible, noting that she knew defendant and had been in a romantic relationship with him, defendant was close enough to open the door, his face was not covered, and there was a streetlight in close proximity to where the observation was made. The court also noted that she told the police that evening that defendant was responsible for the shooting. This Court will not interfere with the trial court's credibility determination. See *Solloway*, 316 Mich App at 180. The evidence was sufficient to establish defendant's identity as the person who committed the offense of second-degree murder.

With regard to his felony-firearm conviction, defendant argues that the weapon used in the crime was never recovered, there was no way to determine whether the weapon that Fomby had previously seen was the one used in the crime, and another witness could not identify the weapon used. To convict defendant of felony-firearm, however, it was not necessary for the weapon used to have been recovered or admitted at trial. Nor was the testimony of Fomby or the other witness regarding the weapon determinative. In *Bass*, 317 Mich App at 269, this Court

concluded that it was reasonable to infer that the defendant possessed a firearm during the commission of murder based on the evidence that the victim's cause of death was a gunshot wound to the back of the head. In this case, the cause of the victim's death was multiple gunshot wounds. As such, it was reasonable to infer that defendant possessed a firearm during the commission of second-degree murder.

## IV. ADMISSION OF TESTIMONY REGARDING CELLULAR TELEPHONE RECORDS

Defendant argues that the trial court erred by denying his request to exclude a police officer's testimony about cellular tower activity for a cellular telephone used to make certain calls in this case. We disagree.

At trial, defendant objected to the testimony of Officer Robert Skender, arguing that his testimony called for expert testimony, which he was not qualified to provide. The trial court, however, permitted Skender to testify as a lay witness, specifically noting that the prosecutor was not attempting to qualify the witness as an expert. Defendant's primary argument on appeal is that Skender's testimony was not reliable because of the technology involved and not because of Skender's qualifications; this particular argument was not raised below and, therefore, is unpreserved. See *Aldrich*, 246 Mich App at 116. "Unpreserved claims of evidentiary error are reviewed for plain error affecting the defendant's substantial rights." *Benton*, 294 Mich App at 202.

MRE 701 provides:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702 provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Defendant argues that Skender's testimony should not have been admitted because it did not meet the requirements of MRE 702. Skender's testimony, however, was not admitted as expert testimony, but as lay witness testimony. Therefore, it was not necessary for his testimony to meet the requirements of MRE 702. Although defendant argued below that Skender's testimony required expertise, he does not adequately make this argument on appeal. In other words, defendant argues about applying MRE 702 to the testimony without even first adequately arguing about or establishing the initial step: that the testimony was "expert" testimony and not "lay witness" testimony.

Even if we interpret defendant's argument as an argument that the testimony should have been deemed "expert" testimony, we would find no basis for reversal because, first, Skender *did* testify that he had received targeted training on "cell phone analysis and mapping." In addition, with regard to the unpreserved contention about the reliability of the technology involved, defendant's citation to a witness in an unpublished case and his citation to a single scientific paper is inadequate to establish plain error.[3]

## V. DEPARTURE SENTENCE

Defendant argues that the trial court abused its discretion by imposing a disproportionate sentence that exceeded the minimum guidelines range. We conclude that resentencing is required because the trial court departed from the sentencing guidelines range without providing adequate reasons for its departure and the extent of the departure.

Defendant's sentencing guidelines range for his conviction of second-degree murder was 162 to 270 months. The trial court departed from this range and sentenced defendant to 30 to 50 years in prison. This Court reviews "a trial court's upward departure from a defendant's calculated guidelines range for reasonableness." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). The reasonableness of a sentence is reviewed for an abuse of discretion. *Id*. In *People v Steanhouse (On Remand)*, 322 Mich App 233, 237-238; 911 NW2d 253 (2017), this Court stated:

> When reviewing a departure sentence for reasonableness, we must review whether the trial court abused its discretion by violating the principle of proportionality set forth in [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)]. A trial court abuses its discretion if it violates the principle of proportionality test by failing to provide adequate reasons for the extent of the departure sentence imposed. . . . In such cases, this Court must remand to the trial court for resentencing. [Citations and quotation marks omitted.]

In *Steanhouse (On Remand)*, 322 Mich App at 238-240, this Court further explained:

> Under the principle of proportionality standard, a sentence must be proportionate to the seriousness of the circumstances surrounding the offense and the offender. Accordingly, the sentencing court must impose a sentence that takes into account the nature of the offense and the background of the offender. Generally, sentences falling within the minimum sentencing guidelines range are presumptively proportionate. However, a departure sentence may be imposed when the trial court determines that the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime. Factors

---

[3] We also note that while the trial court stated that the cellular telephone activity "corroborated" Fomby's testimony, the court found her identification credible based on many other factors. In addition, Officer Skender acknowledged that the location information from the telephone was inexact.

that may be considered under the principle of proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.

> An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality. Therefore, *even in cases in which reasons exist to justify a departure sentence, the trial court's articulation of the reasons for imposing a departure sentence must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender.*

> The first inquiry in our reasonableness review is whether there were circumstances that are not adequately embodied within the variables used to score the guidelines. . . . [T]he guidelines remain a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take . . . into account when sentencing. To conduct such an analysis, we must compare the stated reasons for exceeding the guidelines with the scored offense variables (OVs) to determine whether those reasons were already encompassed within the guidelines. Specifically, we must determine whether the trial court abused its discretion by imposing a departure sentence without articulating whether the guidelines adequately took into account the conduct alleged to support the particular departure imposed. [Citations and quotation marks omitted; second emphasis added.]

In imposing the sentence of 30 to 50 years for the second-degree murder conviction, the failed to expressly provide reasons for the departure or the extent of the departure. Accordingly, the caselaw requires resentencing. *Id*. at 238; *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017).[4]

---

[4] We note that the trial court is not precluded from imposing the same sentence on remand, as long as it provides adequate reasons for doing so.

We affirm defendant's convictions, but remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien