*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RYAN ROBERT HAASE,

Defendant-Appellant.

UNPUBLISHED
January 23, 2020

No. 342723
Oakland Circuit Court
LC No. 2017-264435-FC

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted by jury of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to two years' imprisonment for the felony-firearm conviction and 25 to 60 years' imprisonment for the second-degree murder conviction, with the sentences to be served consecutively. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of the death of Leon Fisher, who died from multiple .25-caliber gunshot wounds at some point during the late evening hours of April 14, 1995, or early morning hours of April 15, 1995. On the night of April 14, 1995, defendant visited the victim at the home of Anthony and Roseann Sussman, where the victim was living. Evidence indicated that defendant visited the victim to collect a debt; the victim owed defendant approximately $100 for marijuana. There was also testimony that defendant had come to the house multiple times before, asking the victim for the drug money. Trial testimony further indicated that there was a sense of hostility between defendant and the victim, that defendant spoke to the victim in threatening and aggressive language, and that the victim would get nervous when defendant visited him. Roseann testified that when defendant visited on April 14, 1995, defendant told her that he was going to put the victim "in check" because the victim had not paid him the drug money. According to the testimony of Roseann and Anthony, defendant and the victim were both still at the house when Roseann and Anthony left that evening between approximately 9:30

and 10:30 p.m. to go to a party,[1] and defendant was not there when they returned home between approximately 2:00 and 3:45 a.m. and found the victim's body. There were no signs of forced entry or damage on any of the home's doors or windows.

Roseann testified that she spoke to defendant on the telephone on April 15, 1995, and that defendant told her during that conversation that he was sorry that she came home to "that." According to Roseann, defendant made this statement without any prompting and without any mention of her discovering the victim's body.

An autopsy was conducted, during which .25 caliber bullets were recovered from the victim's body. It was determined that the cause of death was multiple gunshot wounds. Additionally, a crime scene investigator recovered six .25 caliber shell casings at the crime scene. Rachel Grace, who testified as an expert in firearms and tool mark identification, concluded that all six .25 caliber shell casings were fired by the same gun. However, the trial evidence reflected that the police never located a .25 caliber handgun connected to the shooting.

George Barnes, who was defendant's friend at the time, testified that defendant arrived at Barnes's house in the early morning hours of April 15, 1995, where defendant spent the rest of the night. Defendant asked Barnes to speak to the police later that afternoon. Barnes testified, "He wanted to get our time straight so he wanted me to lie about the time." According to Barnes, defendant wanted him to tell the police that defendant arrived at Barnes's house approximately two to four hours earlier than defendant had actually arrived. Consistent with defendant's wishes, Barnes misrepresented the time of defendant's arrival to the police when he gave his statement on April 15, 1995, and he told the police that defendant arrived at approximately 11:30 or 11:45 p.m. At trial, Barnes acknowledged that he had lied to the police in 1995 about the time when defendant arrived. Barnes further testified that defendant had actually arrived at Barnes's house two to four hours later than Barnes originally reported. Additionally, at some point after the shooting, defendant gave Barnes approximately four to eight unfired .25-caliber cartridges. Barnes further explained that those cartridges appeared to be "the same" color as a fired cartridge that was found at the scene of the murder, which was depicted in a photograph shown to Barnes during trial. According to Barnes, defendant told him that he was giving him the cartridges because he had to "get rid of them." Barnes testified that defendant later confessed to him that he had shot a man at the man's house because the man owed defendant money for marijuana and had subsequently thrown a .25-caliber handgun into a lake.

---

[1] According to their testimony, defendant was outside the house when Anthony and Roseann left because defendant had to back his vehicle out of the driveway in order for Anthony and Roseann to back their vehicle out of the driveway, but defendant had parked his vehicle in the front yard as Anthony and Roseann were driving away from the house. Both Anthony and Roseann testified that defendant had gotten out of his vehicle as they were driving away, and Roseann further testified that defendant was standing outside his vehicle and leaning in through the window.

-2-

In 2016, Barnes informed law enforcement regarding what defendant had told him about the 1995 shooting because the matter had been "weighing on [his] conscience." Barnes maintained that he did not receive anything in exchange for this information other than his own peace of mind.

The jury convicted defendant as previously noted. This appeal then followed.

## II ANALYSIS

On appeal, defendant challenges the admission of certain other-acts and character evidence and, alternatively, claims that his trial counsel was constitutionally ineffective with respect to the admission of this same evidence. We examine defendant's arguments in the order in which they were raised.

### A. STANDARD OF REVIEW

"A trial court's discretionary decisions concerning whether to admit or exclude evidence will not be disturbed absent an abuse of that discretion." *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010) (quotation marks and citation omitted). However, we review de novo preliminary questions of law, such as whether admission of the evidence is prohibited by a rule of evidence. *Id*. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

A defendant preserves a claim of ineffective assistance of counsel by moving for a new trial or an evidentiary hearing. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658; 620 NW2d 19 (2000). In this case, defendant twice moved this Court to remand the matter for an evidentiary hearing related to a claim of ineffective assistance of counsel, although not on any of the grounds on which defendant argues in his appellate brief that defense counsel was ineffective. This Court denied both of defendant's motions to remand.[2] Therefore, defendant failed to preserve the ineffective assistance of counsel claims now raised on appeal. *Id*. Because there was no evidentiary hearing, appellate review is "limited to errors apparent on the record." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law." *Unger*, 278 Mich App at 242. Factual findings are reviewed for clear error, and questions of constitutional law are reviewed de novo. *Id*.

### B. EVIDENCE OF PRIOR HOME INVASION INVOLVING THE ALLEGED THEFT OF A .25 CALIBER HANDGUN

---

[2] *People v Haase*, unpublished order of the Court of Appeals, entered November 14, 2019 (Docket No. 342723); *People v Haase*, unpublished order of the Court of Appeals, entered January 3, 2020 (Docket No. 342723).

Defendant first challenges the admission of evidence that defendant had committed a home invasion in January 1995, during which defendant allegedly stole a .25 caliber handgun.

At trial, Ronald Dibble, Jr., and Emily Milligan testified about a home invasion that occurred at their home on January 19, 1995. Milligan had met defendant approximately two years before the home invasion occurred and had a romantic relationship with him. Dibble and Milligan were siblings who lived with their father and stepmother. Milligan testified that she and defendant broke into her family's house on January 19, 1995, "to see what we could get from my parents [sic] house as far as money and monetary things." According to Dibble, "a lot of valuable things" were removed from the home, including firearms. Dibble testified that his father had gotten a .25 caliber handgun for his stepmother at some point approximately two years before the home invasion occurred. Milligan also testified that her stepmother had a .25 caliber handgun that she had owned for about a year before the home invasion occurred. Both Dibble and Milligan described this gun as silver in color with a pearl handle. Dibble did not know whether his father and stepmother reported the .25 caliber handgun missing after the home invasion, but he knew that it was removed because his father and stepmother had discussed it. Dibble testified that he never saw that particular handgun after the January 19, 1995 home invasion. Milligan indicated that she and defendant were each independently taking different items during the course of the home invasion, but she also testified that she did not take any guns during the home invasion and that she did not see a handgun among the items she and defendant stole once they left the house in defendant's vehicle. Milligan testified, however, that she was positive that the .25 caliber handgun was in the house before she and defendant broke into it and that she never saw that handgun again after January 19, 1995.

Before trial, the prosecution gave notice of its intent to introduce this evidence regarding the January 19, 1995 home invasion and theft of a .25 caliber handgun under MRE 404(b). At a pretrial hearing regarding the prosecution's proposed other-acts evidence, the prosecutor argued that this evidence showed that defendant had access to a weapon consistent with the one used to commit the murder. At the same hearing, defense counsel argued that the evidence of the January 19, 1995 home invasion was not relevant and unfairly prejudicial because a .25 caliber handgun was not reported stolen during the police investigation of that home invasion even though numerous other items—including three other specifically identified firearms—were reported missing and the murder weapon in the instant case was never located. The trial court ruled this evidence was admissible.

At trial, prior to calling their first witness, and outside the presence of the jury, the prosecutor indicated, "We provided [defense counsel] with some additional discovery that's come in this week and—as to the history of the .25 caliber semi-automatic handgun that relates to [Dibble and Milligan's stepmother] in the event that evidence is part of this trial, we've given him some updates as to that." Defense counsel responded,

> I acknowledge receipt of the additional discovery regarding the history of the firearm but it's not the murder weapon, just so that's clear. We have agreement on that. And this is something that was—if it wasn't manufactured in '96 it was not delivered to Michigan until '96. So the date of this is the 14th of April '95, so.

The prosecutor further stated:

> I don't even know if it's necessarily exculpatory but because the investigators searched further for it and we obtained information we naturally gave it to [defense counsel] and—
>
> * * *
>
> —we still, in conjunction with your ruling, we have our theory as to the other 25 and [defense counsel] will have his arguments, I'm sure as well, but I just wanted to make the record clear that we've continued to try and assist him in any way we could.

Based on the subsequent trial testimony of Sergeant Todd Hunt, it appears that the discovery material to which the attorneys were referring during the above discussion was evidence that Dibble and Milligan's stepmother had registered a .25 caliber Beretta, semi-automatic pistol in her name on June 3, 1996, that this gun had arrived at a local store on April 30, 1996, and that Hunt's search did not reveal any other firearms that had been registered to Dibble and Milligan's stepmother prior to June 3, 1996.

On appeal, defendant argues (1) that this new information rendered the evidence of the prior home invasion inadmissible because it undermined the "factual premise and theory of legal relevance" for the evidence, reducing it to mere improper propensity evidence based on unrelated criminal acts, and (2) that defense counsel was also ineffective for failing to renew his objection to the introduction of this evidence. Defendant bases both of these arguments on his assertion that because the evidence revealed the only firearm that was ever registered to Dibble and Milligan's stepmother was not purchased until after the murder occurred, it was impossible for defendant to have stolen the .25 caliber firearm that was used as the murder weapon during the prior home invasion on January 19, 1995. Defendant goes on to argue that fact rendered any evidence of the home invasion irrelevant as evidence of a different and unrelated crime that could only serve as inadmissible propensity evidence.

As an initial matter, the underlying premise of defendant's argument is fundamentally flawed. The fact that Dibble and Milligan's stepmother only registered a firearm in her name in 1996 does not mean that there could not have been a different .25 caliber handgun in her home on January 19, 1995, as suggested by the testimony of Dibble and Milligan. That silver .25 caliber handgun with a pearl handle could have been unregistered or registered in someone else's name, and the legality of its possession before the home invasion occurred was irrelevant to the instant case. Regardless of Dibble and Milligan's stepmother's firearm registration history, there was evidence from Dibble's and Milligan's testimony that a .25 caliber handgun was present in their home before the January 19, 1995 home invasion and that it was never seen again after that date. Accordingly, the conclusion that defendant attempts to draw from the firearm registration history evidence does not logically follow from the record evidence.

Moreover, the evidence of the home invasion and alleged theft of the .25 caliber handgun was admissible under MRE 404(b). MRE 404(b)(1) provides as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

"MRE 404(b) is a nonexclusive list of examples of situations in which the general rule excluding character evidence, MRE 404(a),[3] is not offended because the evidence is probative of some fact other than the defendant's criminal propensity." *People v VanderVliet*, 444 Mich 52, 66; 508 NW2d 114 (1993) (quotation marks and citation omitted).

In *VanderVliet*, 444 Mich at 55, our Supreme Court held that determining the admissibility of other-acts evidence under MRE 404(b) requires a court to apply the following test:

First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury.

In this case, the trial evidence established that the victim's death was caused by multiple gunshot wounds from a .25 caliber firearm. Thus, evidence tending to demonstrate that defendant obtained such a firearm less than three months before the murder was highly relevant to linking defendant to the murder, especially considering that the actual firearm used to murder the victim was never located. See MRE 401 (defining "relevant evidence" to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *People v Hall*, 433 Mich 573, 580-581; 447 NW2d 580 (1989) (opinion by BOYLE, J.)[4] ("Evidence of a defendant's possession of a weapon of the kind used in the offense with

---

[3] MRE 404(a) generally provides that with certain specific exceptions not pertinent to our discussion at this juncture, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion."

[4] We acknowledge that Justice BOYLE's plurality opinion in *Hall* employed a somewhat different mode of analysis concerning MRE 404(b) than that later adopted by our Supreme Court in *VanderVliet*. Compare *Hall*, 433 Mich at 579-582, 585-588 (opinion by BOYLE, J.), with *VanderVliet*, 444 Mich at 55. However, we conclude that the *Hall* plurality's application of the relevancy standard defined in MRE 401 is still applicable as that rule has not changed. As stated in the plurality decision in *Hall*, evidence showing that a defendant possessed a weapon of the type shown to have been used in the crime is relevant to establishing the defendant's identity as the individual who committed the crime because it tends to "link the defendant[] to the crime"

which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense.").

This evidence also could be used to establish defendant's identity as the perpetrator of the murder because it tended to show that he possessed the same type of weapon that was used to commit the murder. A proper noncharacter purpose therefore existed for introducing the evidence suggesting that defendant stole a .25 caliber handgun during the January 19, 1995 home invasion because the theory of relevance for that evidence was not solely dependent on the implication that defendant possessed an inclination for criminal activity. See *People v Denson*, 500 Mich 385, 398-399; 902 NW2d 306 (2017) ("MRE 404(b) prohibits the admission of other-acts evidence when the prosecution's only theory of relevance is that the other act demonstrates the defendant's inclination for wrongdoing in general and thus indicates that the defendant committed the conduct in question. On the other hand, such other-acts evidence may be admissible whenever it is also relevant to a noncharacter purpose, such as one of the purposes specifically enumerated in MRE 404(b)(1).") (citations omitted). "Ultimately, the court must determine whether the prosecution has established some intermediate inference, other than the improper inference of character, which in turn is probative of the ultimate issues in [the] case . . . ." *Denson*, 500 Mich at 402 (quotation marks and citation omitted; alteration and ellipsis in original). In this case, a proper noncharacter inference existed such that the first two *VanderVliet* prongs were satisfied.

The third prong of the *VanderVliet* test requires application of MRE 403.[5] *VanderVliet*, 444 Mich at 74-75. As the *VanderVliet* Court explained,

> Other acts evidence is not admissible simply because it does not violate Rule 404(b). Rather, a "determination must be made whether the danger of undue prejudice [substantially] outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403." [*Id*. at 75 (citation omitted; alteration in original).]

In this case, defendant's sole appellate argument in support of his claim that the evidence's probative value was substantially outweighed by the danger unfair prejudice is that the additional discovery evidence regarding Dibble and Milligan's stepmother's firearm registration history made it impossible for the jury to conclude that defendant stole the murder

---

and "make [the defendant's] participation in the [crime] more probable . . . than it would be without the evidence." *Hall*, 433 Mich at 581 (opinion by BOYLE, J.) (quotation marks and citations omitted; ellipsis in original). We find this reasoning persuasive to our resolution in this case.

[5] MRE 403 provides that even if evidence is relevant, it still "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

weapon during the January 19, 1995 home invasion. As we have already explained, the premise of this argument is logically flawed.

Furthermore, there was no discernable danger of *unfair* prejudice from this evidence. "MRE 403 does not prohibit prejudicial evidence; only evidence that is unfairly so." *Mardlin*, 487 Mich at 627 (quotation marks and citation omitted). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Id*. (quotation marks and citation omitted). "This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v McGhee*, 268 Mich App 600, 614; 709 NW2d 595 (2005) (quotation marks and citation omitted).

In this case, the evidence of the January 19, 1995 home invasion was highly probative to show that defendant obtained a firearm of the type that was used to kill the victim, which was also highly relevant to determining whether defendant was guilty beyond a reasonable doubt of the charged offenses. The danger of unfair prejudice stemming from the negative effect on the perception of defendant's character was low: under the circumstances of this case, we are not faced with a situation where "the most powerful, if not the only, inference that the jury was likely to make from the prior [bad act] is the forbidden one," i.e., that defendant must be guilty in this case because of his misconduct in the past. *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Notably, even though evidence that is relevant to a noncharacter purpose may also reflect on the character of the defendant, such evidence is not automatically inadmissible under MRE 404(b): "Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its 'probative value is substantially outweighed by the danger of unfair prejudice . . . .'" *Mardlin*, 487 Mich at 615-616, quoting MRE 403 (ellipsis in original). In this case, the high probative value and relevance of this evidence was not outweighed by any minimal danger that the jury would place undue weight on any negative implications the home invasion evidence had on defendant's character. *VanderVliet*, 444 Mich at 75; *Mardlin*, 487 Mich at 627. Because the probative value of the home invasion evidence was not substantially outweighed by a danger of undue prejudice in this case, defendant has not shown that admission of the evidence was prohibited by MRE 403.

Finally, the trial court provided a limiting instruction in its final jury instructions, *VanderVliet*, 444 Mich at 55, instructing the jury about the proper purposes for which it could consider evidence of improper acts for which defendant was not on trial and that the jury was prohibited from deciding that such evidence "shows that the defendant is a bad person or that he is likely to commit crimes." The trial court further instructed the jury, "You must not convict the defendant here because you think he is guilty of other bad conduct. All the evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty."

Accordingly, defendant has not established that the trial court abused its discretion by admitting the testimony about the January 19, 1995 home invasion under MRE 404(b) because

admitting the testimony was not outside the range of reasonable and principled outcomes. *VanderVliet*, 444 Mich at 55.

Defendant further argues that defense counsel was also ineffective for failing to renew his challenge to this evidence after receiving the additional discovery related to Dibble and Mulligan's stepmother's firearm registration history.

To establish ineffective assistance of counsel, a defendant is required to show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). In this case, as we have previously explained, the evidence regarding the home invasion was admissible despite the additional discovery material provided before trial. Thus, it would have been futile for defense counsel to have renewed his objection. "[F]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Green*, 322 Mich App 676, 687; 913 NW2d 385 (2018). Defendant therefore has not shown that he received ineffective assistance of counsel on this basis.

## C. EVIDENCE RELATED TO DEFENDANT'S CHARACTER FOR ANGER AND OBSESSION OVER MONEY

Next, defendant argues that defense counsel was ineffective for failing to object to the prosecution's evidence describing defendant's general "bad character for greed and violence."[6]

---

[6] Defendant also makes a cursory, single-paragraph argument that the admission of this evidence constituted plain error that was so plain that the trial judge "should have noticed it and intervened." Defendant cites no authority for the proposition that the trial judge had a duty to make such a sua sponte evidentiary ruling. Moreover, defendant also asserts in this single paragraph, without any additional development of his argument, that the evidence "was also prejudicial enough that reversal under the plain-error standard is warranted." Under these circumstances, we would be justified in treating defendant's argument (that it was plain error to admit the evidence of defendant's general character for greed and violence) as abandoned. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). An issue is abandoned if an appellant "fail[s] to properly address the merits of his assertion of error." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). See also *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.") (quotation marks and citation omitted).

Nonetheless, reviewing this argument under the plain error standard, which defendant concedes is applicable to this claim of error, we conclude that defendant has failed to show plain error requiring reversal. The plain error standard requires a defendant to show (1) error, (2) that

This evidence came in at trial through the testimony of Barnes, Milligan, and defendant's former girlfriend Lindsey Arp. Defendant specifically argues on appeal that the prosecution's evidence of defendant's bad character traits for "greed and violence" was inadmissible under MRE 404(a) because (1) this evidence was introduced by the prosecution solely to show that defendant acted in conformity with these character traits in killing the victim over a small debt and (2) defendant never introduced character evidence that would have justified the admission of this evidence by the prosecution under MRE 404(a)(1).

MRE 404(a) provides in relevant part as follows:

(a) *Character Evidence Generally*. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1) *Character of Accused*. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2), evidence of a trait of character for aggression of the accused offered by the prosecution;

---

was plain, and (3) that prejudiced the defendant by "affect[ing] the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (quotation marks and citation omitted).

In this case, the evidence showed that defendant and the victim were still at Anthony and Roseann's home when Anthony and Roseann left that night to go to a party and that Anthony and Roseann returned home later to find the victim's body. Defendant was gone. The evidence further reflected that defendant convinced Barnes to lie to the police and tell the police that defendant arrived at Barnes's house on the night of the murder two to four hours earlier than he actually did. Barnes also testified that defendant confessed to him that he had shot a man at the man's house and had disposed of a .25 caliber firearm. It was determined that the victim's death was caused by multiple .25 caliber gunshot wounds. In light of this overwhelming evidence of defendant's guilt, defendant has not shown that the relatively brief testimony about his general character for greed and anger had an effect on the outcome of his trial; he therefore has failed to demonstrate plain error affecting his substantial rights. *Id*.

Finally, we additionally note that although defendant's plain error argument was short and was framed as an "alternative" argument, defendant devoted a much more significant portion of his brief to arguing that defense counsel's failure to object to this evidence of defendant's general character for greed and violence constituted ineffective assistance of counsel. Because defendant has framed this issue primarily as one of ineffective assistance of counsel, we have treated the issue accordingly and have analyzed this claim in the body of our opinion.

(2) *Character of Alleged Victim of Homicide.* When self-defense is an issue in a charge of homicide, evidence of a trait of character for aggression of the alleged victim of the crime offered by an accused, or evidence offered by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a charge of homicide to rebut evidence that the alleged victim was the first aggressor[.]

As previously stated, a defendant claiming to have received ineffective assistance of counsel must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Randolph*, 502 Mich at 9. "Prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.*, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

In this case, even if we were to presume that defense counsel's performance was objectively deficient,[7] defendant has not established the requisite prejudice. The other evidence introduced at trial established that when Anthony and Roseann left their house on the night of the murder, defendant and the victim were still present at the house. The evidence further reflected that defendant was gone when Anthony and Roseann returned to find the victim deceased. There were no signs that the home had been forcibly entered. The trial evidence demonstrated that the victim died as a result of multiple .25 caliber gunshot wounds. Additionally, Barnes testified that on the day after the murder, he had lied to the police in accordance with defendant's wishes and told the police that defendant had arrived at Barnes's house on the night of the murder two to four hours earlier than he actually did. Barnes also testified that defendant confessed to him that he had shot a man at the man's house and had disposed of a .25 caliber firearm. According to Barnes, defendant gave him four to eight unfired .25 caliber cartridges at some point after the shooting because he had to "get rid of them." Barnes's testimony indicated that these cartridges were consistent with the fired shell casings found at the scene of the murder. In light of this overwhelming evidence of defendant's guilt, defendant has not demonstrated that there is a reasonable probability that the outcome of the trial would have been different but for the introduction of the relatively minimal evidence of his general character for greed and anger.[8] *Randolph*, 502 Mich at 9. Because defendant has not shown the necessary prejudice, he has not

---

[7] We note, however, that defense counsel may have had a strategic reason for not objecting to this evidence since he argued during closing argument that it would not have made sense for a person who was obsessed with money to kill the person instead of waiting until the next day to receive the money. There was evidence in this case suggesting that the victim had obtained employment and had told defendant on the night of April 14, 1995, that he was going to be paid the next day. "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong presumption of effective assistance of counsel." *Unger*, 278 Mich App at 242 (citation omitted).

[8] We further note that although defendant was charged with first-degree premeditated murder, the jury acquitted him of this charge and convicted him of second-degree murder.

established his claim of ineffective assistance of counsel.  *Strickland*, 466 US at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").  Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto